# STATE OF VERMONT
# ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| In re Appeal of Shaw, et al. | } | |
| (Rinkers Communication | } | Docket No. 4-1-05 Vtec |
| Tower Application) | } | |

## Decision and Judgment Order

This matter concerns a <u>de novo</u> appeal of the Town of Hardwick Zoning Board of Adjustment (ZBA) approval of the telecommunications tower application submitted by Rinkers Communications, which sought authority to install a 180-foot telecommunications tower. The ZBA granted approval for a 100-foot tower, with conditions. Karen Shaw, Forest L. Foster, Suzanna Jones, Robert Houriet, Heather Bryant, Geoff Butler, and K. Elizabeth Cole (collectively referred to as Appellants) appealed from that ZBA Decision. Rinkers filed its own cross-appeal.

The individual Appellants represent themselves in this proceeding. Cross-Appellant-Applicant Rinker's, Inc., d/b/a Rinkers Communications (Rinkers), is represented by L. Brooke Dingledine, Esq.; the Town appeared through its non-attorney Town Manager, Daniel Hill.

The Court conducted a site visit and merits hearing on two separate days. Thereafter, the parties were afforded an opportunity to submit post-trial memoranda. Based upon the evidence admitted at trial, the Court makes the following Findings of Fact and Conclusions of Law:

## Factual Background

1. Rinkers is licensed by the Federal Communications Commission (FCC) as a radio common carrier and has provided paging services to the general public for more than twenty-five years. Many of its customers are public safety or medical services providers. It maintains several telecommunications towers in central Vermont.

2. Rinkers proposes to construct and maintain a 180-foot tower on property owned by Wendell and Beverly Shepard along Bridgeman Hill Road, near the top of what is known as Bridgeman Hill. The Shepards' entire parcel contains several large fields and a single family

residence. The Rinkers tower is proposed to be located in the northern field on the Shepards' property. The field is not clearly visible from neighboring roads or properties.

3. The site upon which Rinkers proposes to locate the new tower has been used as a site for telecommunications equipment for over twenty-five years. Rinkers purchased the telecommunications equipment on the Shepards' property in 2003, after the previous owner, Adelphia Cable Company (Adelphia) went bankrupt. Rinkers currently maintains the pre-existing thirty-nine foot wooden tower on the site first constructed by Adelphia. Rinkers's paging antenna is located on top of this wooden tower.

4. The field where the existing tower is located is near the northeast and northwest boundaries of the Shepard property. The field slopes away from those boundaries and towards the south. These borders are lined with trees, some of which are over sixty feet tall. The existing tower and ground-mounted equipment is not easily observed from nearby roads or residences. Due to the nature of telecommunications technology and the height of these border trees, the performance of the existing pager antenna is not consistent.

5. Rinkers entered into a new lease with the Shepards that allows Rinkers to continue to occupy a portion of the Shepards' property where the existing tower is located. The leased area has general dimensions of 200 feet by 200 feet. The lease runs for a term of 20 years.

6. Rinkers proposes to remove the existing tower, move an existing telecommunications shed that is near the northeastern boarder and install the new tower near where the old tower was located. Satellite dishes that were once on the property and operated by Adelphia have since been removed. Rinkers also proposes to construct and maintain two air-conditioned buildings on both sides of the tower base. Each building will be 12 feet wide and 24 feet long. A chain link fence will run between the north and south ends of each building, so as to block unauthorized entry to the tower. The buildings will be served by an underground electrical service from the nearest utility pole on the Shepard property. A propane-powered electric generator will be installed between the buildings to provide back-up power in the event of black-outs.

7. Rinkers proposes to install its pager antenna, which is just under twenty feet tall, on top of the new tower. The pager antenna will be of the "combiner" variety, thereby allowing multiple parties to simultaneously use it. The tower would be just over two hundred feet from the northeastern boundary and well over two hundred feet from the northwestern boundary, which abuts Bridgeman Hill Road. These buffers from nearby boundaries would provide

reasonable assurance that the new tower and antenna structure, measuring less than 200 feet, would not trespass upon neighboring property, should the tower collapse.

8.     The tower would be held in place by three guy wires anchored on the Shepard property. It would not be illuminated.  FCC regulations do not require beacons or lights on towers or antennas under two hundred feet tall.

9.     Rinkers designed its new tower so that it can accommodate several two-way radio antennas, like those used by area police and emergency service responders, as well as communications repeater stations, wireless broadband service antennas and up to six cellular-type telecommunications carriers.  The two-way radio antennas, one to receive signals and another to transmit signals, are about 22 feet tall.  Paging technology requires that these two antennas be vertically separated from each other; they cannot be located across from one another. The cellular antennas are usually 12 feet in height and attached to the tower on booms and across from each other, so that service can be offered in a 360º range from the tower.  An example of how the antennas are connected to the tower is shown in the photos of an identical tower Rinkers owns and maintains on Irish Mountain in Berlin, Vermont, that is visible from I-89 Exit 6.  See Exhibit 12.

10.     The proposed tower would be made of galvanized steel in a lattice type design that would allow an observer to look through the tower.  The Rinkers tower in Berlin, as shown in Exhibit 12, is of a similar design and is the site of several co-located pager and cellular antennas.

11.     There are no other telecommunications towers in Hardwick or the surrounding communities that would provide service similar to that of the proposed tower.  The lack of telecommunication facilities sometimes results in area police and emergency responders, including the Hardwick Police and the Vermont State Police, having difficulty in communicating with their dispatchers.  Due to the lack of telecommunications towers in the area, police and emergency responders are often unable to communicate with each other via radio.  Cellular phone service in the area is nonexistent.

12.     Rinkers researched other potential sites in the area to locate a telecommunications tower. Due to the nature of telecommunications technology, low-lying areas are not suitable for such towers; the antennas need to be on a higher point, above a tree line, so that signals may be broadcast to the outlining areas.  One such site in Hardwick — Buffalo Mountain — would provide equal or higher elevation for a proposed telecommunications tower.  Another

telecommunications provider — Verizon — sought approval for a tower on Buffalo Mountain several years ago, but met strong local opposition and ultimately failed in its attempt to obtain municipal approval. Mr. Rinkers, president of Rinkers Communications, testified to his knowledge of Verizon's prior failed efforts and the added expense of developing that alternate site, including the need to clear for and construct an access road of about a mile long to the proposed site near the top of Buffalo Mountain. Neither Mr. Rinkers nor any other witness testified as to their knowledge of any other alternate site in Hardwick or the surrounding area that would be appropriate for a telecommunications tower.

13.     An independent study, titled "Personal Wireless Services Analysis of Facility Needs and Siting" and dated September 9, 2005, was commissioned by the Town of Hardwick (hereinafter referred to as the "Hutchins Study"). It was authored by Mark F. Hutchins, who worked in cooperation with Town officials and members of the Hardwick Planning Commission and ZBA. While the Hutchins study researched thirteen potential telecommunications sites in and around Hardwick, the Rinkers site and the potential site on Buffalo Mountain seemed to provide the most reliable coverage for the Town. In fact, the study contains the conclusion and recommendation that the Rinkers site will provide extensive but not total coverage for all of Hardwick[1] and concludes that "some sort of two-tower scenario" (i.e.: the Rinkers site and Buffalo Mountain), supplanted by repeaters, may be the only effective means to provide complete wireless telecommunications coverage to all of Hardwick.[2]

14.     The proposed Rinkers tower on the Shepards' property will be visible from several locations, including the homes or farms of most Appellants. The proposed tower site is downhill from the northerly boundaries of the Shepard property by about 23 feet in elevation. Most, if not all of the Appellants' homes are north of the proposed tower site. The tallest of the trees on the northerly boundaries were 67 feet tall when last measured in May of 2004. Thus, roughly the bottom half of the tower, the fencing, generator and buildings will be below these nearby trees and not visible from adjoining properties to the north. About 90 feet of the tower and the 20-foot

_____

[1]  Hutchins Study at p. 11–13 and Figures 17 and 31.

[2]  Id. at 17. The Hutchins Study also notes that while tower height would improve coverage, approval of such towers must be respectful of aesthetic and other impacts. The Study notes that such concerns doomed a previous application to site a telecommunications tower on Buffalo Mountain and that any future application to site a tower on Buffalo Mountain that was taller than 150 feet "would face strong opposition." Id. at 13.

pager antenna will be above these trees.  Rinkers's balloon demonstration provided estimates of the tower and antenna height.[3]

15.     The neighborhood in which the tower is proposed is in the Compact Residential Zoning District (CR District).  The District's stated purpose "is to provide for moderate to high density residential development, and appropriate non-residential uses, in predominately built-up areas within and surrounding the town's traditional village centers."  Hardwick Zoning and Subdivision Bylaws (Bylaws) § 2.4(A).  Telecommunications facilities are permitted as a conditional use in the CR District.  Nearby properties are almost all used as year-round residences and are located on medium to large tracks of land.  There are four working farms in the neighborhood, two of which follow organic practices.

16.     The potential of a nearly two hundred foot telecommunications tower within several hundred yards of Appellants' homes and farms causes them to have aesthetic and health concerns, as well as fears that the proposed tower may have a negative impact on the value of their homes and properties.

17.     On December 7, 2004, the ZBA approved Rinkers's application (No. 2004-045) for a telecommunications tower zoning permit, but limited the tower's height to 100 feet, plus an additional 20 feet for the proposed paging antenna to be attached to the top of the tower.  The ZBA also attached several conditions to their approval of the reduced-height tower.

**Discussion**

Land use cases involving the siting of telecommunications towers will most often present at least one set of conflicts between important, competing interests.  Due to the nature of telecommunications technology, a tower must be designed to allow the antennas attached to it to be situated above nearby tree tops.  Statutes and ordinances encourage towers to be designed so that many antennas may be located on one tower (so as to minimize the number of individual towers in a given area), resulting in the incentive for towers to be taller, to accommodate multiple antennas.  But a tall tower with multiple antennas increases the likelihood that it will be visible from many areas and could interfere with the aesthetic beauty of an area, particularly an area with as much aesthetic beauty as Hardwick and its surrounding towns.

---

[3] Rinkers's Exhibit 9 shows three photos of a pink test balloon tethered to the proposed tower site by a string.  The string was originally 180′ long, but measured 210′ long when the balloon was reeled in several days later.  Appellants' Exhibits A, B, C and K show a different Rinkers height demonstration, using a blue balloon.

The Town of Hardwick and its citizens had the foresight to not only commission the Hutchins Study, but also to adopt specific Bylaws provisions that govern telecommunications facilities and reference concerns about telecommunications facilities in their Town Plan. We review the applicability of those provisions in more detail below.

In this de novo appeal, this Court is charged with rendering a new decision, based upon the evidence admitted at its trial, on the issues preserved for appeal that relate to the pending application. 24 V.S.A. § 4472; see also In re Poole, 136 Vt. 242, 245 (1978) ("All of the evidence is heard anew, and the probative effect determined by the appellate tribunal [the Environmental Court here] as though no decision had been previously rendered."). Appellants filed their Statement of Questions, thirty-six in number and some with sub-parts, that generally challenge the conformance of Rinkers's application with the Town Plan and the Bylaw provisions that set standards for telecommunications facilities, in particular Bylaws § 4.15. Appellants' Statement of Questions also includes more generalized challenges to the proposed tower. In the hope of addressing all issues preserved for review in this appeal by Appellants' thirty-six Questions in a complete, non-repetitive and clear manner, we have subtitled our discussion below. Since the only remaining Question raised by Rinkers's cross-appeal speaks to the general issue of compliance with the Hardwick Zoning Bylaws (Bylaws), we incorporate our analysis of Rinkers's Question in the three sub-sections of our discussion below.

## I. Compliance with Town Plan (Appellants' Questions 1, 2 & 3)

Appellants' first three Questions challenge whether the proposed tower conforms with specific provisions of the Hardwick Town Plan (Plan) and whether the Bylaws, as interpreted in the context of the pending tower application, implement the goals of the Plan.

While the sincerity with which Appellants assert that the proposed tower conflicts with specific provisions of the Hardwick Town Plan is genuine, we cannot pass judgment on these Questions because our Supreme Court has repeatedly stated that municipal plans do not have "the force and effect of a legislative enactment," unless specifically incorporated into the zoning bylaws. In re Appeal of Wesco, 2006 VT 52, ¶ 33. Other than the generalized reference to the Town Plan in the general purpose provisions of Bylaws § 1.2, we find no specific reference to or incorporation of the Plan in the Bylaws.

The Supreme Court in <u>Wesco</u> explained its reasoning in a common sense manner by quoting from the long-standing precedent of <u>Kalakowski v. John A. Russell Corp.</u>, 137 Vt. 219 (1979):

> The plan is merely an overall guide to community development. It is a general guideline to the legislative body for its consideration of the municipality's land use program and of the community's needs and desires. Often stated in broad, general terms, see 24 V.S.A. §§ 4382–4383, it is abstract and advisory. Zoning bylaws, on the other hand, are specific and regulatory. Zoning is properly conceived of as the partial implementation of a plan of broader scope. It must reflect the plan, but it need not be controlled by it. Although the plan may recommend many desirable approaches to municipal development, only those provisions [specifically] incorporated in the bylaws are legally enforceable.

<u>Id</u>. at 225–26 (citations omitted).

Thus, we must conclude that because Appellants' Questions 1, 2 and 3 ask this Court to pass judgment on conformance with a Plan that is not a regulatory document, those Questions cannot serve as a basis for rejection of the pending tower application. To the extent Appellants raise similar issues in the context of questioning whether the proposed tower conforms with the Bylaws, we address those issues below.

## II. Compliance with Bylaw provisions.

### A. Safety and health concerns (Appellants' Questions 5, 11, 20, 22 & 35)

Appellants raise several issues relating to the protection of public health, safety and welfare. These important interests are protected by references in Bylaws §§ 3.7(B)(1), 4.15(F)(1) and 4.15(F)(4). The specific evidence presented at trial did not reveal even a suggestion that the proposed tower posses a threat to public health, safety and welfare. The tower and its attachments are no more than 200 feet tall; the tower is located over 200 feet away from the nearest boundary and a considerably greater distance from other boundaries. The nearest boundaries are surrounded by mature trees that provide a physical buffer from adjoining properties.

Pursuant to Bylaws § 4.15(F)(1), Rinkers commissioned a study of the expected transmissions, emissions and interference from the proposed tower and its antennas. Applicant's Exhibit 13. This study evidenced that the proposed tower was not expected to exceed 3.5% of the maximum standards established by the FCC and the Occupational Safety and Health

Administration (OSHA). While Appellants referenced the Court to several studies that speak to the general risks and threats that telecommunications towers and equipment may pose, Appellants presented no evidence that addressed the expected transmissions, emissions or interference from this specific tower. Thus, the only admitted evidence presented expressed an estimate that the proposed tower and antennas would operate will below the federally established health and safety standards.

### B. Tower siting, review of alternate sites and respect for scenic and historic resources (Appellants' Questions 6–9, 10, 12, 13–16, 19, 21, 30, 31, 33 & 34)

The proposed tower is sited in a residential area that also serves as the neighborhood of several working farms, including two organic farms. Hardwick's Bylaws emphasize the importance of protecting the Town's scenic and historic resources, and for good reason: the Bridgeman Hill Road section of Town, as well as several other areas of Hardwick, provide excellent examples of the natural beauty of our State. However, based upon the evidence presented, we conclude that the proposed tower does not adversely affect the scenic and historic resources of the neighborhood in which it is sited.

The proposed tower location has served as the site for telecommunications equipment for over 25 years. While the current equipment will be expanded and the tower will be considerably taller, all proposed ground mounted equipment will continue to be screened from the neighboring road and property by the ground cover and trees on the border of the northern field where the tower is to be located. Given the siting of the tower on the down-sloping field and the trees on the northern boundary, all ground-mounted equipment and nearly half of the tower will be screened from view. This setting will still result in about 90 feet of the tower being above the nearest tree line and therefore visible from neighboring properties. The lattice-type design of the tower appears to minimize the visual impact of the portion of the tower that will be visible.

Rinkers investigated alternate sites for its proposed tower. Its president testified that the proposed site would best serve the telecommunications needs of the community. The Town's own study supported Rinkers's conclusion that its site was superior to others. Ironically, the alternate site Appellants suggested — Buffalo Mountain — already failed to receive municipal

approval for a tower similar to that proposed here.[4] The Town's study suggested that a tower of greater than 150 feet on Buffalo Mountain, while possibly necessary to provide sufficient telecommunications service to the area, would face serious opposition.

The Buffalo Mountain site provides further support for the appropriateness of Rinkers's proposed site on Bridgeman Hill: Buffalo Mountain is an area of largely undeveloped land with few, if any residents or farms. It is mostly forested; siting a telecommunications tower on it would require extensive road work and tree cutting. These factors may have been the very basis for the demise of the tower proposed on Buffalo Mountain.

Rinkers's proposed tower site has been used for telecommunications equipment for over a quarter century. Because it is sited in a field, minimal site clearing will need to occur. However, since its nearby boundaries are bordered by mature trees and ground cover, the site is screened from adjoining properties.

Bylaws § 4.15(C)(1) requires that telecommunications towers be sited on exiting buildings or other structures, whenever possible. Rinkers provided adequate evidence for the Court to conclude that existing buildings and structures in Hardwick do not provide the altitude or location necessary for the equipment needed to serve Hardwick. The Town's own study supports this conclusion. No evidence was offered to the contrary. We therefore conclude that Rinkers fulfilled its burden of satisfying Bylaws § 4.15(C)(1).

## C. Removal of obsolete equipment (Appellants' Question 17)

Appellants challenge whether Rinkers can or should be trusted to remove "all abandoned, unused, obsolete or noncompliant wireless telecommunications facilities," as required by Bylaws § 4.15(H). The Court understands from observations made during the site visit and explained in testimony at trial that Rinkers may now have ownership or control of telecommunications equipment that falls within this category that has not been removed. But no evidence was introduced at trial that the pre-existing equipment referenced was subject to a prior removal order or the provisions of Bylaws § 4.15(H). This Bylaw provision appears to speak to conditions that must be followed in connection with the approval of new telecommunications equipment, although the section references "all . . . telecommunication facilities" and could be read to

---

[4] Even though the Town study suggests Buffalo Mountain as the next best site for a telecommunications tower, it is not surprising that its proposed tower could not receive Town approval. The significance of Buffalo Mountain is evidenced by the fact that it is reproduced as the background on the Town's official seal.

control all such equipment in the ownership or control of the applicant. In any event, the provisions of § 4.15(H) can serve as appropriate conditions for approval of Rinkers' proposed telecommunications facilities. We therefore incorporate such a condition in our approval below.

### D. Traffic impacts (Appellants' Question 18)

The Rinkers tower is not proposed to be regularly staffed; access to it will not be open to the public. Other than the occasional maintenance personnel, no admitted evidence suggested any new traffic that the proposed new tower would generate. Bylaws § 5.2(H)(3) relates to review of traffic impacts when conditional use applications are being considered.[5] Given the nominal additional traffic generated by the proposed tower, we conclude that Rinkers has satisfied its burden of proof under § 5.2(E)(3) and specifically conclude that the proposed tower has no measurable impact upon area traffic.

### III. Miscellaneous issues (Appellants' Questions 4, 23–26, 28, 29 & 36)

Our final discussion addresses the miscellaneous concerns Appellants raise regarding the impact of the proposed tower upon the value of their properties, the integrity of the Bylaws, potential future liabilities and the past unrelated activities Mr. & Mrs. Sheppard have allowed to occur on their property. While we have no reason to doubt the accuracy or sincerity of Appellants' allegations here, we must remind Appellants that this is a Court of limited jurisdiction. We have only the authority to consider issues the Town ordinances authorize the municipal panel in the first instance and this Court in the second instance to review in connection with a pending application. We have not been made aware of any provisions in the Bylaws or other Hardwick ordinances that authorize consideration of these issues in connection with a tower application. We therefore decline to address these issues, which we conclude are beyond the scope of this Court's jurisdiction.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Rinkers's application for conditional use approval of a 180-foot telecommunications tower is **GRANTED**, subject to the following terms and conditions:

---

[5] Even though Appellants challenge the conditional use approval of Rinkers's tower, it appears that traffic is the only specific conditional use criteria that Appellants preserved for review in this appeal. Impact upon the character of the area is also a conditional use criteria under Bylaws § 5.2(E)(2), but Appellants preserved review of this impact through their challenges under Bylaws § 4.15.

1. The tower, its support guy wires, equipment buildings and fencing shall be constructed as shown on the drawings and site plans admitted into evidence. See Exhibits 1 through 13.

2. No antennas other than the pager antennas, two-way radio antennas, communications repeater stations, wireless broadband service antennas and up to six cellular-type telecommunications antennas Rinkers proposed in its application shall be located on the completed tower, unless and until Rinkers receives permit approval for such additional antennas. All other antennas and the proposed cellular antennas shall first receive zoning approval pursuant to Bylaws § 4.15(F)(1) before being located on and operated from the Rinkers tower.

3. Rinkers shall remove all abandoned, unused, obsolete or noncompliant wireless telecommunications equipment and facilities on the proposed site within twelve months of the cessation of operations at the site and shall restore the site to its original, pre-telecommunications equipment appearance. The Court concludes that it is not necessary at this time to require Rinkers to post a bond or other security. Nothing in this condition shall limit a party from requesting that the Court revisit the need for a bond other security upon a specific showing that any such equipment or facilities has been abandoned, gone unused, or become obsolete or noncompliant for a twelve month period.

4. The Court authorizes the tower to be constructed to a height of 180 feet, with a pager antenna on top of it of no more than twenty feet, thereby **REVERSING** the specific limitation by the ZBA of the tower to a height of no more than 100 feet. The Court concludes that the additional height is warranted by the increased coverage estimated by Rinkers' expert and the encouragement of co-location on telecommunications towers contained in Bylaws § 4.15(A)(4).

5. This Decision and its conditions shall run with the land and enforceable against Rinkers, its successors or assigns.

This matter is **REMANDED** to the Hardwick Zoning Administrator, solely to complete the ministerial act of issuing a zoning permit in conformance with this Decision, which also serves as the Judgment Order in this appeal.

Done at Berlin, Vermont, this 2nd day of October, 2006.

_____
Thomas S. Durkin, Environmental Judge