2006 VT 52

**In re Appeal of WESCO, INC.**

[904 A.2d 1145]

No. 05-138

¶ 1. June 12, 2006. The City of Barre appeals from decisions of the Vermont Environmental Court granting permits to Wesco, Inc. to enable it to convert a full-service gasoline station, with automobile repair service, to a convenience store and self-service gasoline operation. The City argues that the court's decisions are inconsistent: (1) with an earlier decision of this Court providing that the development proposals were modifications of a preexisting nonconforming use into another nonconforming use; (2) with 24 V.S.A. § 4406(1) because Wesco seeks to both develop a preexisting undersized lot and do so with a conditional use permit; (3) with the Barre zoning ordinance which prohibits increased use of a noncomplying structure; (4) with 24 V.S.A. § 4408(b) with respect to the discontinuance of nonconforming uses; (5) with the Barre zoning ordinance by allowing an additional structure — a canopy over the gas pumps — in a setback area; and (6) with the requirement for conditional use approval that the court consider the master plan and the economic plan. We conclude that the court acted within its dis-

cretion on each of these issues and affirm.

¶ 2. This case involves an eleven-year conflict over Wesco's plan to convert an existing gasoline service and repair station at 169 Washington Street into a convenience store that sells gasoline. In 2001, this Court decided some of the issues that had emerged, *Simendinger v. City of Barre*, 171 Vt. 648, 770 A.2d 888 (2001) (mem.), and remanded the case to the Environmental Court for further action. That decision concluded in Wesco's favor the first of three positive rulings that were required for the project — approval from the planning commission, or the Environmental Court on appeal from the planning commission, "under specific criteria for nonconforming or conditional uses in a planned residential district." *Id.* at 648, 770 A.2d at 890. This left two other necessary approvals: (1) approval for the conditional use by the zoning board of adjustment, or the Environmental Court on appeal from the zoning board; and (2) site plan approval by the planning commission or the Environmental Court on appeal from the planning commission.[1] On these approvals, this Court held that the Environmental Court acted prematurely in granting conditional use and site plan approval before these issues were addressed on the merits by the zoning board and planning commission respectively. *Id.* at 652, 770 A.2d at 894.

¶ 3. We did, however, reach the merits of the Environmental Court's conditional use review in one respect because the

[1] Throughout the lengthy process in this case, the members of the planning commission and the zoning board have been the same people. These bodies have now been merged into the development review board, which performs the functions assigned to each of the predecessor boards.

decisions involved a determination of how the development proposal should be considered under the Barre zoning ordinance. The Environmental Court ruled that the proposal involved a modification of a gasoline station — a use prohibited in the applicable district under the ordinance but preexisting the zoning scheme — into a neighborhood grocery store — a use conditionally permitted in the district. In order to reach this conclusion, the court had to account for the fact that Wesco would still sell gasoline. It did so by accepting Wesco's argument based on its proposal to replace the four preexisting gas pumps with one "pump" that distributes gasoline through four outlets. Because the Barre ordinance defines a "gasoline station" as having more than one pump or dispenser, Wesco argued, and the court accepted, that with the proposed equipment the development would no longer be a gasoline station. Because it was not a gasoline station, the court ruled it could be a neighborhood grocery store that could be approved as a conditional use.

¶ 4. We rejected the Environmental Court's construction of the ordinance as applied to the development proposal. We ruled that despite the change in equipment to dispense the gasoline, the proposal still involved a gasoline station. *Id.* at 651, 770 A.2d at 893. Thus, we held that the proposal could not be viewed as involving only a neighborhood grocery store: "Accordingly, we conclude that the court erred in evaluating the proposal as a conditional-use neighborhood grocery store, rather than as a proposal to alter a preexisting nonconforming service and gasoline station to another nonconforming use within a planned residential district." *Id.*

¶ 5. On remand, the Environmental Court then remanded to the Barre zoning board and planning commission to remedy the procedural error. When these boards again denied conditional use

and site plan approval, Wesco again appealed, and the court again reversed each decision. The court responded to this Court's decision on the nature of review by holding that the proposal involved two separate uses on the same lot and that multiple uses are allowed by the Barre zoning ordinance. The first use is the gasoline station, which is a preexisting nonconforming use that Wesco's development proposal would modify. The second use is the convenience store which is a neighborhood grocery store that can be approved as a conditional use in the district. Thus, the court held that if the two separate uses each met the applicable zoning requirements, the overall development proposal could be approved. It went on to approve the development proposal, with conditions, as discussed below.

¶ 6. The City challenges the court's power to approve the development proposal on seven grounds. First, the City argues that the Environmental Court's decision is inconsistent with our decision, which did not separate the uses between gasoline sales and the sale of food items and related products in the convenience store. In response, Wesco argues that we should follow the approach of the Environmental Court or, alternatively, rule that the proposal still involves only a gasoline station so that no permit is needed.

¶ 7. The Environmental Court dealt with the alleged inconsistency between our earlier decision and its view of the proper construction of the ordinance:

> Much confusion appears to have resulted from both parties' unstated assumption that only one use may be located on the lot in question. However, unlike many towns' zoning regulations, nothing in the Barre City zoning regulations limits the use of a lot to a single use category. . . .

. . . .

The parties did not have the occasion to discuss or point out this unusual feature of the Barre City zoning regulations in their presentations to the Vermont Supreme Court that resulted in the Supreme Court's memorandum decision in *Simendinger v. City of Barre,* 171 Vt. 648 (2001), in which the Court stated that the Environmental Court "erred in evaluating the proposal as a conditional use neighborhood grocery store, *rather than as* a proposal to alter a preexisting nonconforming service and gasoline station to another nonconforming use within a planned residential district." (Emphasis added.) In fact, the proposal must be evaluated *both* as a conditional use neighborhood grocery store (in an existing nonconforming building) *and* as a proposal to alter a preexisting nonconforming service and gasoline station to another nonconforming use.

We defer to the Environmental Court's interpretation of a zoning ordinance "unless it is clearly erroneous, arbitrary, or capricious." *In re Cowan*, 2005 VT 126, ¶ 7, 179 Vt. 560, 892 A.2d 207 (mem.).

¶ 8. Although the City debates the application of the court's analysis to this case, it does not debate the general proposition that the Barre ordinance generally allows multiple uses on a single lot as long as each of the uses complies with the ordinance. Thus, we are pointed to no part of the ordinance that is inconsistent with the court's generalization, and we have found none. We do not find the court's construction inconsistent with our holding in *Simendinger*, which rejected the court's earlier holding that the

Wesco proposal could be evaluated solely as a neighborhood grocery store use under the applicable conditional use standards. We cannot find the court's construction "clearly erroneous, arbitrary, or capricious." *In re Cowan*, 2005 VT 126, ¶ 7.

¶ 9. The City argues, however, that the court's generalization that multiple uses can be allowed does not apply here because the ordinance prohibits adding gasoline sales to other retail uses. This argument is based on the ordinance's definition of retail store:

> RETAIL STORE: Customary use of enclosed restaurant, cafe, shop and store for the sale of goods at retail, personal service shop and department store, excluding any drive-up service, freestanding retail stand, gasoline service and motor vehicle repair service, new and used car sales and service, trailer and mobile home sales and service.

Barre Zoning Ordinance § 5.2.04(a). The City argues that this definition means that the ordinance "prohibits the sale of gasoline at retail establishments." The City reaches that conclusion based on the following logic: (1) under the ordinance, the only use the convenience store can fit within is as a neighborhood grocery store; (2) a neighborhood grocery store is a retail store as defined above; (3) under the definition, a retail store cannot sell gasoline.

¶ 10. We note that the City is relying only on a definition of a retail store that nowhere precludes the uses excluded from the retail store definition. Although we agree with steps (1) and (2) of the logic of the City's argument, step (3) is debatable. On this third step, the Environmental Court reached an alternative construction of the effect of the definition of a retail store. The court held that the exclusions from the definition are present

because external components — sale of gasoline, drive-up service, etc. — are outside the "enclosed" store and require separate approval. Under this construction, a retail store can sell gasoline, as long as that sale is permitted as a second use. We find the court's construction of the ordinance more persuasive and affirm it within the standard of review.

¶ 11. Second, the City argues that because the development proposals involve an undersized lot, they cannot be implemented under 24 V.S.A. § 4406(1) as interpreted in *Lubinsky v. Fair Haven Zoning Board*, 148 Vt. 47, 527 A.2d 227 (1986). The factual basis of the claim is that the lot is approximately 16,000 square feet in area and the minimum lot size in the zoning district is 80,000 square feet. Wesco asserts, and the Environmental Court agreed, that its right to develop the undersized lot is protected by § 5.1.05(3) of the Barre Zoning Ordinance. Section 5.1.05 provides:

> Any parcel of land in individual and separate nonaffiliated ownership from surrounding properties may be developed for the purposes permitted in the district in which it is located even though not conforming to minimum lot size requirement:
>
> (1) If the parcel is not less than one-eighth of an acre in area with a minimum width and depth dimension of forty feet; or
>
> (2) If the parcel could have been developed under the Municipal Zoning Ordinance of the City of Barre, which preceded these regulations, for the purposes permitted in the district in which it is located; or
>
> (3) If a nonconforming structure or noncomplying building is situated on the parcel, pro-

vided that the coverage of the building is not enlarged.

The City responds by attacking its own ordinance, contending that subsection (3) is inconsistent with the state authorizing statute, 24 V.S.A. § 4406(1), and, therefore, cannot serve as the basis for its proposals. We assume, for the purposes of this case, that the City may challenge its municipal regulations in this proceeding. The statute, as it existed at the time of the application in this case, was substantially similar to § 5.1.05(3) of the ordinance, except that subsection (3) of the ordinance is not reflected in the statute.[2] That difference, and our decision in *Lubinsky*, form the basis of the City's argument.

¶ 12. The City argues that the statute protects the right to develop only an undeveloped undersized lot and a municipality is prohibited from providing greater protection — here, the right to further develop a *developed* undersized lot. Thus, the City quotes the following language from *Lubinsky*:

> There is no disagreement that a basic purpose of 24 V.S.A. § 4406(1) is to provide that lots of sufficient size whose existence predates the enactment of zoning but whose size does not quite comply with the new zoning law will not go to waste unused, but must be allowed to be developed for purposes consistent with uses permitted in the zone where located. It seems plain that the aim is to allow the stated use of lots already existing and not yet developed or built upon. . . .
>
> . . . .
>
> In any event, given the limited purpose of qualifying such lots for basic use within the zoning division, and weighing the disarray to be brought about by unlimited application of the language, we hold that the statutory function is exhausted when it brings the "small lot" within the zone as a basic unit, and does not continue to operate to give such lots expanded privileges not available to standard lots in the division.

*Lubinsky*, 148 Vt. at 50-51, 527 A.2d at 228-29. The City then relies upon *In re Richards*, 174 Vt. 416, 423, 819 A.2d 676, 681-82 (2002), for the proposition that municipal zoning regulation with respect to undersized lots cannot be either more

---

[2] The statute stated:

> No municipality may adopt zoning regulations which do not provide for the following:
>
> (1) Existing small lots. Any lot in individual and separate and nonaffiliated ownership from surrounding properties in existence on the effective date of any zoning regulation, including an interim zoning regulation, may be developed for the purposes permitted in the district in which it is located, even though not conforming to minimum lot size requirements, if such lot is not less than one-eighth acre in area with a minimum width or depth dimension of forty feet.

permissive or more restrictive then the regulation required by the statute.[3]

¶ 13. Although we understand the components of the City's argument, we do not believe that they apply to this case. *Lubinsky* dealt with a density limitation that required 10,000 feet of lot area per family dwelling and a single-family dwelling that the owner sought to convert to a two-family dwelling. Because the lot contained fewer than 20,000 square feet, the owner sought to rely on the undersized lot statute to override the density limitation in the ordinance. The Court recognized that acceptance of the owner's argument would prevent any density limitation for undersized lots.[4]

___

[3] As noted in *In re Bailey*, 2005 VT 38, ¶ 9 n.∗, 178 Vt. 614, 883 A.2d 765 (mem.), § 4406(1) was amended effective July 1, 2004 to include a proviso stating that the statute "shall [not] be construed to prohibit a bylaw that is less restrictive of development of existing small lots." 24 V.S.A. § 4412(2)(C); see 2003, No. 115 (Adj. Sess.), § 119(c) (repealing 24 V.S.A. §§ 4404-4409) and § 95 (replacing 24 V.S.A. § 4601(1) with 24 V.S.A. § 4412(2)). The amended statute is not applicable here. In any event, we reject the City's claim.

[4] Although the decision does not state so explicitly, apparently the lot contained fewer than 10,000 square feet, the minimum area for a single-family dwelling, and could be developed initially only because of § 4406(1). Thus, the owner argued that § 4406(1) could override the density requirement entirely because § 4406(1) continued to apply beyond its initial effect of allowing some development of the undersized lot. The Court apparently believed that this argument could not be made except in the circumstance that the initial development was allowed only because of § 4406(1). For

Thus, it held that once the statute brought "the 'small lot' within the zone as a basic unit," it could not be used for further development to add density in violation of the specific ordinance provision. *Lubinsky*, 148 Vt. at 51, 527 A.2d at 229.

¶ 14. We emphasized in *In re Richards*, 174 Vt. at 420, 819 A.2d at 679, however, that the description of the limited purpose of § 4406(1) in *Lubinsky* was "plainly obiter dicta" in that case, and relied upon a different purpose for § 4406(1) that was developed in *Drumheller v. Shelburne Zoning Board of Adjustment*, 155 Vt. 524, 586 A.2d 1150 (1990). Similarly, we would find that the limited purpose recognized in *Lubinsky* does not govern here.

¶ 15. Nonetheless, we conclude that, whatever its purpose, § 4406(1) does not apply to this case. Wesco's lot was developed into the service station well before the adoption of zoning in the City of Barre, and the station did not require the presence of § 4406(1) for its authorization. Thus, Wesco does not rely upon § 4406(1) for its redevelopment proposal, nor does § 4406(1) by its terms prevent the redevelopment. Instead, Wesco relies upon the specific authorization in zoning ordinance § 5.1.05(3) governing the modification of preexisting nonconforming structures or noncomplying buildings on undersized lots. The City has broad discretion within the statutory language to determine how it will treat modifications of preexisting noncomplying structures. See *In re Stowe Club Highlands*, 164 Vt. 272, 278, 668 A.2d 1271, 1276 (1995)

___

this reason, the Court expressed that acceptance of owner's argument would place the undersized lots "in a situation of special and unique privilege not available to standard zoning lots in the district." *Lubinsky*, 148 Vt. at 50, 527 A.2d at 228-29.

(noting approach of Legislature is to authorize municipalities to deal with such modifications). The provision of the zoning ordinance governing development of noncomplying structures on preexisting small lots falls within that discretion.

¶ 16. Section 5.1.05(3) of the ordinance clearly covers the redevelopment proposal before us. By its express terms, it can apply to already developed lots. If it applied only to initial development on raw land as the City suggests, there could not be a "nonconforming building or noncomplying structure" on the land as the language provides for.

¶ 17. Next, and related, the City argues that § 4406(1) protects only permitted uses on undersized lots and not conditional uses on such lots. It derives this limited standard from the language of the statute, particularly that an undersized lot "may be developed for the purposes permitted in the district in which it is located." *Id.* The City argues the term "purposes permitted" means only uses permitted as of right. Wesco responds that the term "permitted" in the statute is synonymous with "allowed," and a conditional use is allowed as long as the conditions are met.

¶ 18. Again, we emphasize that Wesco's development proposal has been approved because it is an authorized conversion of a preexisting nonconforming use. Wesco does not have to fit within the language of § 4406(1) as long as it fits within § 5.1.05(3) of the ordinance. Nevertheless, the City has incorporated the relevant language of § 4406(1) into § 5.1.05 of the ordinance so even a conversion of a nonconforming use on an undersized lot must be for "purposes permitted in the district." Thus, we must address the language construction issue.

¶ 19. In making its argument, the City argues that we have held that a conditional use is not a permitted use. On this point, the City relies particularly on *Town of Brighton v. Griffin*, 148 Vt. 264,

532 A.2d 1292 (1987). In *Griffin*, the defendant purchased a property on which an auto service station had operated a number of years earlier, and defendant reopened the station. The Town brought an action to enjoin the operation of the station arguing: (1) service stations had become conditional uses after adoption of the zoning ordinance; and (2) although the station had been a preexisting use, it lost that status because the use had been discontinued for six months as specified in the ordinance. In response to defendant's argument that the service station was a permitted use to which the discontinuance provision did not apply, we relied upon two Rhode Island cases for the proposition that a "conditionally permitted use is not synonymous with the phrase 'permitted use.'" *Id.* at 269-70, 532 A.2d at 1294-95 (citing *V.S.H. Realty, Inc. v. Zoning Bd. of Review*, 390 A.2d 378, 382 (R.I. 1978), and *Lindberg's, Inc. v. Zoning Bd. of Review*, 262 A.2d 628, 629 (R.I. 1970)). Specifically, we held that "[a]n auto service station is not permitted within the commercial district unless it complies with certain requirements set forth in the zoning ordinance." *Griffin*, 148 Vt. at 268, 532 A.2d at 1294. The holding of *Griffin* was recently restated in *In re Korbet*, 2005 VT 7, ¶ 7 n.2, 178 Vt. 459, 868 A.2d 720 (mem.): "a use that did not have a CUP or comply with all aspects of a town's zoning bylaws was nonconforming."

¶ 20. We recognize that the term "permitted use" can be used to distinguish the use from a conditional use. See *In re Miserocchi*, 170 Vt. 320, 323, 749 A.2d 607, 610 (2000) (concluding a residential dwelling "is a permitted use in the residential district, not a conditional use"). The terms are distinguished generally by the regulatory requirements that must be met to obtain a zoning permit. Thus, once conditional use permit requirements are met, the use "complies with all applicable zoning regulations"

and is indistinguishable from a permitted use. *In re Jackson,* 175 Vt. 304, 313, 830 A.2d 685, 693 (2003). This is the necessary implication of the holding in *Griffin* that a conditional use is not permitted unless it complies with the requirements in the ordinance. *Griffin,* 148 Vt. at 268, 532 A.2d at 1294. Conditional uses "are permitted uses, generally compatible with the zoning district, but not at every location, or without certain standards or other requirements being met." 8 P. Rohan, Zoning and Land Use Controls § 44.01[1], at 44-10 (2005).

¶ 21. If the ordinance used the term of art, "permitted use," in a context where it was clear that it was distinguishing between a permitted and conditional use, the City's argument would be strong. But here, the ordinance requires only a permitted "purpose." As the above Rohan treatise quote explains, the nature of a conditional use is that the purpose is permitted, but the implementation of that purpose in the specific development proposal must be specially examined to ensure it is compatible with other uses. See 24 V.S.A. § 4407(2). We believe that a conditional use is indistinguishable from a "permitted purpose" within the meaning of the ordinance.

¶ 22. The City next argues that the proposed development involves an "increased use" of a noncomplying structure as prohibited by § 5.1.104(c)(1) of the zoning ordinance. The subsection states that a "nonconforming use or noncomplying structure may be maintained so long as such maintenance does not result in increased floor area or increased use." The City makes this argument based on the usage of the building that formerly housed the office and automobile service facilities. Without changing the footprint, these areas are to be converted to the convenience store space. The City argues that because the use of these areas by the public will increase markedly, both because private space was being converted

into public space and because the hours of operation were being lengthened, the project would violate § 5.1.104(c)(1).

¶ 23. Initially, the Environmental Court held that the subsection does not apply because the issue did not involve maintenance of the preexisting use. It also ruled, however, that the City had shown "a mere increase in the intensity of use of a noncomplying structure," which is allowed under *In re Miserocchi,* 170 Vt. at 327, 749 A.2d at 612-13.

¶ 24. We note at the outset that the proposal involves maintenance of a nonconforming use solely because the statute as it existed at the time of the application defined a nonconforming use as including a noncomplying structure. 24 V.S.A. § 4408(a)(1); *In re Miserocchi,* 170 Vt. at 323, 749 A.2d at 610. Otherwise, once the court found that the proposal complied with the conditional use standards, it became fully permitted and no longer was a nonconforming use.[5] We also note that there is no increase in floor area because the footprint of the building has not changed and all of the space was used by the office and automobile service facilities. See Barre Zoning Ordinance § 5.2.03 (defining floor area as "the gross horizontal area of the floors of a building"). Thus, the only argument that the City can make is that there will be increased use of a noncomplying structure.

¶ 25. Part of the City's argument is not supported by the wording of the ordinance. The City argues that the level of

_____

[5] The City argues that this conclusion is wrong because, after the Environmental Court granted the permit, the City amended the ordinance to prohibit retail stores in the zoning district. This amendment was not raised in the trial court and, in any event, does not apply to the application that was submitted much earlier.

use should be measured exclusively by the amount of public use. The ordinance does not use the word "public," and we see no grounds to add it. Under that argument, structures that had no public use — for example, a factory — could never be converted to some public use even if the extent of use overall went down by any measure. We are left then with the argument that the longer hours of operation necessarily increase the use.

¶ 26. In reviewing this argument, we note that the building is a noncomplying structure because it is on an undersized lot. In that situation, the concern of the ordinance is primarily with the floor area used by the occupant. We noted in *Miserocchi* that when the use of the land is changed from one permitted use to another, and there is no change in the degree that the structure is noncomplying, court decisions are generally favorable to the conversion. 170 Vt. at 327, 749 A.2d at 612-13. We went on to note that decisions hold in that situation that "a mere increase in the intensity of use of a noncomplying structure is not prohibited" and to hold that "absent a regulation specifically prohibiting an increase in the intensity of use of a noncomplying structure, we decline to create a rule contrary to the majority of law on this issue." *Id.* The reason to apply this rule here is even greater than in *Miserocchi* because in part Wesco is converting the use from a nonconforming use to a permitted use. On this basis, we affirm the decision of the Environmental Court on this issue.

¶ 27. Next, the City argues that its zoning provision on the effect of discontinuance of a nonconforming use is invalid because it allows restoration of the nonconforming use for twelve months after discontinuance, rather than six months. The City makes this argument because Wesco ceased gasoline sales for a period of ten months. In making this argument, the City relies upon the

wording of the governing statute, 24 V.S.A. § 4408(b)(3), as it existed at the time of the discontinuance:

> (b) To achieve the purposes of this chapter set forth in section 4302 of this title, municipalities may regulate and prohibit expansion and undue perpetuation of nonconforming uses. Specifically, a municipality may control:
>
> . . . .
>
> (3) Resumptions of nonconforming uses, by prohibiting such resumption if such use is abandoned for any period of time or if discontinued for six calendar months regardless of evidence of intent to resume such use; . . . .

The City argues that under the statute a city can allow discontinuance for only six months before preexisting nonconforming use status is lost and Barre's ordinance is invalid because it allows discontinuance for up to twelve months before that status is lost.

¶ 28. We again assume for purposes of this case that the City can challenge its own ordinance. The City's construction of the statute was rejected in *Badger v. Town of Ferrisburgh*, 168 Vt. 37, 41 n.1, 712 A.2d 911, 914 n.1 (1998), where we held: "We construe the statute as a floor that restricts the municipality from adopting a policy less favorable to the landowner, but allows a more favorable policy. Thus, the Town was free to establish a longer discontinuance period before a landowner lost their right to resume a nonconforming use." (Citations omitted.) The longer discontinuance period in the Barre ordinance is valid under *Badger*. There is no dispute that the Wesco discontinuance was within the period authorized by the Barre ordinance.

¶ 29. Next, the City claims the Environmental Court erred when it allowed Wesco to build a canopy over the gas pumps. The canopy is limited in size to 4' by 22', the size of the pump island, and 15' high, with lights recessed into the canopy. The preexisting pumps did not have a canopy over them.

¶ 30. The City argues that the canopy is a new structure within the setback area and it can not be justified as a preexisting noncomplying structure. The Environmental Court disagreed and applied § 5.1.04(c)(2) of the zoning ordinance, which provides: "A nonconforming use or noncomplying structure may be altered with [development review board][6] approval in order to address considerations of energy, safety, environment and health so long as such alteration does not result in increased floor area or increased use." The court found that the canopy would not result in increased floor area because floor area is defined in the ordinance as "gross horizontal area of the floors of a building," *id.* § 5.2.03, and the canopy is a structure but not a building. It also found that the canopy would not result in increased use. It found that the canopy was an alteration of the pump island and that the alteration would improve safety by reducing glare from the lights and protect the flame suppression system.

¶ 31. The City's main argument on this point is that the canopy is a separate structure and not part of the preexisting pumps and pump island so it is not part of a nonconforming use. The purpose of the structure is solely to light, shelter and protect the gasoline pumps; it is difficult to separate the canopy from the

pumping apparatus. Thus, we believe that court's application of the zoning ordinance is not "clearly erroneous, arbitrary, or capricious," *In re Cowan*, 2005 VT 126, ¶ 7, and affirm the decision as within our limited standard of review.

¶ 32. The City's final argument is that the Environmental Court erred in failing to consider Barre's Economic Action Plan, the master plan and the general goal of the zoning ordinance to "provide for the orderly development of the City of Barre." Barre Zoning Ordinance § 5.1.02. The City particularly points to the Economic Action Plan that opposes changing zoning to allow more retail uses along Washington Street.

¶ 33. While zoning ordinances have "the force and effect of a legislative enactment," *Kalakowski v. John A. Russell Corp.*, 137 Vt. 219, 223, 401 A.2d 906, 909 (1979), the municipal plans do not. As we explained in *Kalakowski*:

> The plan is merely an overall guide to community development. It is a general guideline to the legislative body for its consideration of the municipality's land-use program and of the community's needs and desires. Often stated in broad, general terms, see 24 V.S.A. §§ 4382-4383, it is abstract and advisory. Zoning bylaws, on the other hand, are specific and regulatory. Zoning is properly conceived of as the partial implementation of a plan of broader scope. It must reflect the plan, but it need not be controlled by it. Although the plan may recommend many desirable approaches to municipal development, only those provisions incorporated in the bylaws are legally enforceable.

*Id.* at 225-26, 401 A.2d at 910 (citations omitted). Nothing in the Barre ordinance

---

[6] As discussed in footnote 1, the planning commission and zoning board have now been merged into the development review board.

requires that the zoning approval process adhere to the aspirational provisions of the plans. Nor does the general language of the zoning ordinance help the City's position. Although the City broadly claims that "[w]hen the Development Review Board makes a decision to approve or deny a conditional use application, it is bound to give weight to . . . the City's Master Plan and the Economic Action Plan," we find no legal support for such a procedure. Nor are we persuaded by the decisions the City cites from other states; each relies on the unique wording of the statute or regulation in its jurisdiction.

¶ 34. In this general section of its argument, the City also argues that the Environmental Court gave no weight to the general policy of phasing out nonconforming uses. We explained the legislative history of the implementation of this policy in *In re Letourneau*, 168 Vt. 539, 545-46, 726 A.2d 31, 36 (1998). Without repeating that discussion, we note that the authority to require the phasing out of nonconforming uses was removed by the Legislature, and, in any event, never extended to noncomplying structures. Short of a phase-out requirement, it is up to the municipality to determine its policy with respect to nonconforming uses, including noncomplying structures. The Environmental Court applied Barre's ordinance provisions on nonconforming uses in reaching its decision, and we have affirmed that application.

¶ 35. We also note that the Barre ordinance requires a very extensive regulatory inquiry for conditional uses, and that process involves the same issues as are covered in the plans. Thus, under § 5.14.02(c) of the ordinance, the court acting as the planning commission had to determine that "the proposed use in the proposed location will not be detrimental to inhabitants in the immediate vicinity of the proposed location or to the public" after considering

[t]he location of the proposed use, its environmental impact on residential use in the district, the need for the use in the district, the need for the use in the district primarily and the City of Barre secondarily, the generation of traffic likely to be caused by the proposed use, the effect of the use on the safety or health of adjacent inhabitants and the public, the fire hazard generated, [and] the conformity of the use with standards set in Article 11 . . . .

Then, the court acting as the zoning board also had to find that the conditional use meets the standards of other articles in the ordinance and "the proposed conditional use will not adversely affect":

(1) The capacity of existing or planned community facilities;

(2) The character of the area affected;

(3) Traffic on roads and highways in the vicinity; and

(4) Ordinances or bylaws of the City of Barre then in effect.

*Id.* § 5.32.04(c). Although the City disagrees with the result of those reviews, the court conducted them properly, and we have affirmed the results. It is difficult to see how consideration of the plan provisions that Barre cites, or the policy of phasing out nonconforming uses, could change the result.

*Affirmed.*