STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| In re: Blakeman Site Plan | } | Docket No. 274-11-06 Vtec |
| (Appeal of Blakeman) | } | |

Decision and Order

Appellant-Applicant Kevin Blakeman (Applicant) appealed from a decision of the Development Review Board[1] (DRB) of the Town of Randolph dated October 31, 2006, denying site plan approval for a nine-unit multi-family dwelling on a 5.81-acre lot located at 741 Sunset Hill Road.[2] Applicant is represented by Brice C. Simon, Esq. and the Town is represented by Peter M. Nowlan, Esq. Initially, Interested Persons Daniel Baginski and Barbara J. Paulson filed with the Court a document that they had signed, stating that they "and the following[3] Sunset Hill Residents" are interested parties, that they "all would like

---

[1] The DRB decision was rendered by a four-member majority of the DRB; the three-member minority also filed a dissenting opinion.

[2] In an earlier proposal for a similar structure on the same parcel, the DRB denied the proposal based on its conclusion that the proposal failed to meet site plan criteria §4.1(a), (b), and (d). The Court affirmed the DRB's decision as to §4.1(a), but solely based on the then-absence of approval for connections to the municipal sewer; and affirmed the DRB decision as to §4.1(d) based on the potential effect of the proposal on the neighboring Baginski-Poulson property. That decision was issued "specifically without prejudice to Applicant's future submission to the DRB of this or a redesigned or revised application." In re: Application of Kevin Blakeman, Docket No. 167-8-05 Vtec, slip op. at 14 (Vt. Envtl. Ct., June 19, 2006).

[3] Helen and John Anaya, Julie Brill and Mark Miller, Philip and Joan Frey, David and Donna Garrison, Margaret Harper, Alan and Therese Heath, Floyd and Wendy Tucker, Jeanette and Michael Smith and Robert McAdoo.

1

to be involved with the proceedings," and that "as a group" they would submit "petitions and other documents." The other listed individuals did not sign the document. Shortly thereafter, Attorney Glenn C. Howland entered his appearance for interested parties Baginski and Paulson only, as individual interested parties. The following "undersigned residents[4] of Sunset Hill Road" filed a signed document authorizing Dan Baginski and Alan Heath to represent their interests in this appeal, as well as with regard to "residential zoning on both north and south sides of Sunset Hill Road," accompanied by a petition they had signed and submitted to the DRB the previous July.

At the initial pretrial conference, the Court explained the difference between individual parties under 24 V.S.A. §4465(b)(3) and a group with party status under 24 V.S.A. §4465(b)(4) (which group must have filed a petition at the DRB and must designate a representative as required by §4465(b)(4)). The scheduling order resulting from that conference stated that the group has party status unless it is challenged, and that the group was free to file a brief on behalf of the group or to rely on the brief filed by the individual interested parties.

This appeal is on the record, as the Town has adopted and implemented the procedures necessary for on-the-record determinations. 24 V.S.A. §§4471(b); and see the Municipal Administrative Procedure Act, 24 V.S.A. §1201 et seq. 24 V.S.A. §4464(b)(1) requires decisions to be issued in writing and to include a statement of the factual bases on which the DRB has made its conclusions and a statement of the conclusions. For an on-

---

[4] Dan Baginski, Barbara Paulson, Alan Heath, Margaret H. Harper, Philip C. Frey, Joan Frey, Floyd P. Tucker, Shirley A. Baumann, Wendy K. Tucker, William H. Baumann, Jr., Michael G. Smith, Jeannette Martin-Smith, Robert C. McAdoo and Terry Heath. In addition, prior to this listing, Alan Heath and Donna Garrison had filed individual entries of appearance.

2

the-record decision, 24 V.S.A. §1209(b) requires that "[f]indings of fact shall explicitly and concisely restate the underlying facts that support the decision. They shall be based exclusively on evidence of the record in the contested hearing." Section 1209(c), in turn, requires the conclusions of law in the decision to be based on the findings of fact. That is, the DRB decision must "provide the links of reasoning between the record and the result, as well as having an adequate basis in the evidence in the record." In re: Application of Kevin Blakeman, Docket No. 167-8-05 Vtec, slip op. at 2 (Vt. Envtl. Ct., June 19, 2006), quoting In re Stagecoach Road 6-Lot Subdivision, Docket No. 238-11-05 Vtec, slip op. at 5 (Vt. Envtl. Ct., May 15, 2006).

The parties were given the opportunity to submit written memoranda and argument. The time for the Town's response was extended due to illness. In an on-the-record appeal, the Court is required to determine if substantial evidence exists in the record as a whole from which the factual findings of the DRB might reasonably be inferred, see In re Appeal of Leikert, Docket No. 2004-213, slip op. at 2 (Vt. Supreme Ct., Nov. 10, 2004) (three-justice panel), and to determine whether the DRB's conclusions are supported by its findings and based on the requirements of the Zoning Regulations. Upon consideration of the evidence in the record as a whole, and of the written memoranda and argument filed by the parties, the Court determines as follows.

The property and project have been fully described in the application and DRB decision. No issues have been raised on appeal as to the appropriateness of the traditional design of the three-segment building, its layout or orientation on the lot, or its placement on the lot set back 160 feet from the road as the topography slopes downwards. Appellant-Applicant proposes to leave the large horse barn in place on the property to be used for storage by the tenants of the proposed units, or for them to keep horses on the property. The DRB approved this use of the existing barn as accessory to the proposed multi-family building.

The project property is located on the northerly side of Sunset Hill Road, at the easterly edge of what is currently Rural 5 Acre (RU 5) zoning district, adjacent to a Residential (RES) zoning district in which interested parties Baginski and Paulson's property is located. Sunset Hill Road runs roughly parallel to Route 66, a major artery leading generally westerly from Interstate 89 steeply downhill into the village of Randolph.

The project property lies at the southeast corner of what is proposed in the Town Plan to be a Gateway Commercial zoning district, which includes property in this area between Route 66 and Sunset Hill Road, including property along the northerly side of Sunset Hill Road. In the Town Plan, the adjacent district (including the Baginski/Paulson property) is proposed to be a new Residential type of zoning district designed to accommodate higher density development than the Rural Residential or Rural Agricultural zoning districts also set out in the Town Plan. The Town Plan was adopted in December of 2004; the current Zoning Regulations applicable to the present appeal were adopted in 1988 and were last amended on April 5, 2005.

In the current Rural 5 acre (RU 5) zoning district, the use category of "multi-family dwelling" is a permitted use, not a conditional use. Accordingly, it is a use that is allowed as of right in the district, subject only to approval of the specific site plan for the proposal. That is, the conditional use criteria of §3.4.1 of the Zoning Regulations (and see those in 24 V.S.A. §4414(3) which are required to include the character[5] of the area) do not apply to this application. Site plan approval under §§4.0 and 4.1 of the Zoning Regulations, allows the DRB to impose "appropriate conditions and safeguards with respect only to the adequacy of traffic access, circulation and parking[,] and landscaping and screening." The

---

[5] Even if this section were to apply, it defines the character of the area affected as being defined by the purpose of the zoning district and by the specifically stated policies and standards of the municipal plan, that is, the character of the area as it is planned to be in the future according to the plan, not necessarily to remain as it currently exists.

4

substantive requirements of site plan approval are contained in the criteria in §§4.1(a) through (d).

The DRB decision found that the application met the development standards of the regulations and the provisions of other municipal regulations and ordinances, under site plan criterion §4.1(a), and that it met site plan criteria §4.1(c) (regarding traffic and circulation) and §4.1(d) (regarding its effect on the appropriate development of the adjacent properties). No party cross-appealed the DRB's decision that the application meets the development standards of the regulations and the provisions of other municipal regulations and ordinances, or that it meets §§4.1(c) and 4.1(d); those conclusions of the DRB have therefore become final. 24 V.S.A. §4472.

The DRB decision denied site plan approval on the basis that the application failed to meet certain other aspects of site plan criterion §4.1(a) and failed to meet criterion §4.1(b). Appellant-Applicant appealed the denial of site plan approval; therefore, only the issues on which site plan approval was denied are before the Court in this appeal.

Site Plan Criterion §4.1(a)

Section 4.1(a) requires the "proposed use, design, and layout" to meet the provisions of the Zoning Regulations. The DRB did not determine that any aspect of the proposed use, design, or layout failed to meet the zoning regulations, but instead concluded that the property did not comply with the purpose statement for the current Rural[6] (RU 3 and RU 5) zoning districts because it would not be suitable for an on-site septic disposal system to serve nine units, although the application proposes and has been approved for a connection to the municipal sewer system, which is located nearby along Route 66.

---

[6] In the current Zoning Regulations, a large majority of all of the property in Randolph lies in an RU 5 or RU 3 district.

The purpose statement in §6.4 of the current Zoning Regulations for both Rural zoning districts states in full that these districts are:

> [t]o protect and encourage farming of all kinds, as an important part of the Town's economic base and to provide areas for residence at a density consistent with the capacity of the soil and topography as to furnish a potable water supply and to accommodate a private disposal system for such buildings.

Nothing in the Zoning Regulations prohibits a building located in one of the Rural zoning districts from being connected to the municipal sewage system, if such a connection is possible, although such connections are not required. In fact, the policies adopted in the 2004 Town Plan for use in developing and implementing new zoning ordinances recommend that growth and density, including residential, "should be targeted primarily to those areas served by existing municipal or private utility service infrastructure, including . . . sewer," and that the "carrying capacity" of the land to support development without contributing to the degradation of water quality or other natural resources should be a consideration. Town Plan at p. 37. Even the current Zoning Regulations reflect a preference for municipal sewer connection where possible, in that the Residence and Rural 2-20 zoning districts specifically allow smaller minimum lot areas for units connected to the municipal sewer. Regulations §6.3. In this context, the purpose statement of the current district is not violated by the fact that the project is proposed and has been approved for a connection to the municipal sewer system. Rather, such a connection meets the purpose statement for the district in that it ensures that the carrying capacity of the land to support the development is not exceeded. The DRB conclusion that the proposal fails to meet the provisions of the zoning ordinance is not supported by its findings. Moreover, no engineering evidence was presented that an on-site septic system could not have been developed to serve the property. That is, the facts 'found' in Finding 17 regarding the heaviness of the soil, the use of mound systems in the area, or the 'likely' inadequacy of the

6

soils, are not supported by evidence in the record of this proceeding.

Section 4.1(a) also requires the "proposed use, design, and layout" to "meet the intent of the Town Plan." The DRB made no findings or conclusions suggesting that either the design or the layout of the site plan failed to meet the "intent" of the Town Plan; all of its findings and conclusions regarding the Town Plan elements of site plan criterion §4.1(a) related only to the proposed use as a nine-unit multi-family residential use.

In general, "[a]lthough the plan may recommend many desirable approaches to municipal development, only those provisions incorporated in the bylaws are legally enforceable." Kalakowski v. John A. Russell Corp., 137 Vt. 219, 225-26 (1979). Aspirational or hortatory provisions in a Town Plan have no regulatory effect unless specifically incorporated in the zoning regulations. In re Appeal of Wesco, Inc., 2006 VT 52, ¶33; and see Appeal of Rydjeski, Docket No. 225-12-04 Vtec, slip op. at 7 (Vt. Envtl. Ct., March 30, 2006).

It is useful to note the jurisprudence that has developed in cases making the analogous determination of whether a proposed project complies with a town plan for the purposes of Act 250. Several key principles have been developed to guide that determination. First, a determination of nonconformity must be based upon a "'specific policy' set forth in the plan." The specific policy must be stated "in language that 'is clear and unqualified, and creates no ambiguity.'" The language in the local plan must be mandatory, as opposed to merely providing "guidance." A plan provision is considered to "evince[] a specific policy" if it "(a) pertains to the area or district in which the project is located; (b) is intended to guide or proscribe conduct or land use within [that area or district]; and (c) is sufficiently clear to guide the conduct of an average person, using common sense and understanding." In re: Cetrangolo and DeFelice Act 250 Permit Application, Docket No. 66-3-06 Vtec, slip op. at 7–8 (Vt. Envtl. Ct., April 11, 2007) (internal

7

citations omitted). See also 4 K. Young, Anderson's American Law of Zoning §23.15 (4th ed. 1996) ("A comprehensive plan is not prepared and adopted primarily with a view to its legal impact upon the right to use land. Such a plan . . . is a guide to community development rather than an instrument of land-use control. . . . Thus, a permit issuing agency may not withhold a permit solely on the ground that the use is inconsistent with the comprehensive plan.").

We examine each of the bases for the DRB's conclusion that the application does not meet the "intent" of the Town Plan, noting that the DRB failed to make findings as to the "intent" of the Town Plan, but merely selected among a number of the goals and policies stated in the Town Plan.

The first two "goals" which the DRB addressed do not come from either the goals and policies of the plan for future land use in Randolph (Town Plan, pp. 37–38) or for future housing in Randolph (Town Plan, p. 65). Rather, they are from an introductory section on page 17 of the Town Plan, expressing the planning principles applied in drafting the plan itself; they express the goals of the drafters of the plan regarding what the plan should contain. These five planning principles outlined on page 17 are, in reverse order, that the plan should provide a basis for resolving conflicts between land use options by prioritizing land use goals for different areas of town; that the plan acknowledges that conserving resources is being done for a future generation as well as the present population; that land use rules should be made to be clear, concise and fair; that land development policies should encourage land uses that are compatible with the community and meet its needs over time by encouraging a compact, efficient pattern of settlement; and that property values should be protected and enhanced, by some assurance that surrounding properties will have the same, compatible, or complementary uses. The DRB concluded that the proposed use would fail to meet two of these planning principles: regarding protection of property values and regarding a compact, efficient pattern of

8

settlement.

Even if "protect and enhance property values" is a specific enough policy of the plan to be used to analyze whether the proposal's site plan should be approved, the DRB made only one finding under the heading of "protect and enhance property values:" that "[a]ll of the 14 developed properties on Sunset Hill Road, save one, are used as single-family residences." The DRB made no findings on why the proposed multi-family residential use, which is a permitted use in the district, is not a compatible or complementary use to the single-family residences in the area. Nor was there any evidence in this proceeding as to the use of the fourteenth property (which appears to be the large property shown as "Trimount" on Exhibit 10, adjacent to the subject property on its west and north sides and extending down to Route 66). More importantly, there was no evidence and the DRB made no finding as to the property values in the area or whether or in what way the proposed multi-family dwelling would affect those property values. The conclusion of the DRB decision as to this first general land use goal of the Town Plan is not supported by its findings or by the evidence.

Similarly, even if "encourage a compact, efficient pattern of settlement" is a specific enough policy of the plan to be used to analyze whether the proposal's site plan should be approved, the DRB made only one finding under the heading of "encourage a compact, efficient pattern of settlement:" that "[t]he closest multi-family dwelling is a mile from the subject property with numerous single-family dwellings between." The second general land use goal reads in full as follows: "Encourage a compact, efficient pattern of settlement. Good land use planning will allow for orderly growth, while preserving the essential rural character and livelihoods that are central to Randolph's beauty, traditions and quality of life. Land development policies should encourage land uses that are compatible with the community and meet its needs over time." Town Plan at 17. The DRB made no findings on why the proposed multi-family residential use, which is a permitted use in the current

9

district, does not carry out the goal of orderly growth or establishing a compact, efficient pattern of settlement. Rather, its findings in Finding 15 that the property is "in close proximity to the downtown" and that it is located approximately a half mile by road from Route 66, together with its findings in Finding 16 that it is "easily accessible to existing roads and will be connected to the public sewer system" seems instead to support the contrary conclusion that the proposal would meet this goal, that is, that it would fill in a compact pattern of settlement rather than promote sprawl.

Moreover, this goal of good land use planning can only be implemented through the specific provisions of the Zoning Regulations. The current zoning for the property allows multi-family residential use as a permitted use, while the proposed zoning for this property would allow multi-family residential uses at least as conditional uses (whether it is to be Gateway Commercial as now shown in the Town Plan or Residential as argued by the Interested Persons). The new Residential zone proposed in the Town Plan is specifically earmarked as a primarily residential zone "in areas easily accessible to existing roads and/or municipal services, and which are more desirable places to allow for higher density development than the Rural Residential or [Rural] Agricultural Zones." Town Plan at 42 (emphasis added). Indeed, the DRB's Finding 16 seems to argue in favor of placing the subject property in the Residential zoning district. Neither the project property nor any of the neighboring properties is shown in the Town Plan as proposed to be in the Rural Residential zone, contrary to the final sentence of Finding 16.

Based on the record as a whole, the conclusion of the DRB decision as to this second general land use goal of the Town Plan is not supported by its findings or by the evidence.

The DRB next analyzed the fourth of eight goals in the Housing section of the Town Plan: to "[m]aintain and enhance the quality of life of existing residential and rural neighborhoods and the distinctions between them." Town Plan at 65. Even if "maintain and enhance the quality of life of existing residential . . . neighborhoods" is a specific

10

enough policy of the plan to be used to analyze whether the proposal's site plan should be approved, the DRB made only one finding under this heading: that "the quality of life in the Sunset Hill neighborhood is defined by the way it currently exists: 14 single-family residen[ce]s along a 1-mile long road." The DRB made no findings to define the extent of the neighborhood or to define the characteristics of its existing quality of life; the conclusions section in fact refers to the neighborhood as residential in one section and as rural in another. If the quality of life in a neighborhood were inevitably equated to the existing number of existing types of residences, no development would be possible and it would not be possible for zoning regulations to encourage changes in land use patterns to carry out a municipal plan. Moreover, if it were the policy of the plan or the zoning regulations to prohibit or restrict multi-family residential buildings in this neighborhood, the use category could have been made a conditional use or not an allowed use in the district. The area could have been defined as a low-density residential area in the current regulations or in the Town Plan, but it was not so defined. Therefore, based on the record as a whole, the conclusion of the DRB decision as to this fourth housing goal of the Town Plan is not supported by its findings or by the evidence.

Finally, the DRB concluded that even though the Town Plan shows the subject property in an area within the Gateway Commercial zoning district, it should more properly be placed in the new Residential zoning district. While as discussed above, both districts as discussed in the Town Plan call for more intense residential development than merely low-density single-family residential uses, it is not for the DRB (or for this Court) to change or second-guess what is found in the Town Plan. The parties and the DRB members are free to seek or participate in discussions of amendments to the Town Plan or new zoning regulations to carry out the provisions of the Town Plan, but such activity is inappropriate within the scope of this application for site plan approval. Therefore, based on the record as a whole, the DRB lacked jurisdiction to make this determination, and in

11

any event its conclusion as to the appropriate zoning district for this property in the Town Plan is not supported by its findings or by the evidence.

Site Plan Criterion §4.1(b)

Section 4.1(b) requires that the "proposed use, design, and layout will be of such a location and in such size and character that it will be in harmony with the appropriate and orderly development of the surrounding area."

In relation to this site plan criterion, the DRB determined that all but one of the fourteen surrounding properties along Sunset Hill Road are currently improved with moderately-sized single-family homes. The DRB made only one finding: that the appropriate and orderly development of the surrounding area is low-density residential. The DRB cannot substitute its judgment for the process that resulted in the Town Plan, in determining what the appropriate and orderly development of the surrounding area ought to be. The DRB decision equated "appropriate and orderly development" with the already-existing development in the area, while as discussed above the Town Plan shows that the surrounding area is earmarked for greater density, even if it falls within the new Residential zoning district rather than the new Gateway Commercial district. Accordingly, the DRB's conclusion that the proposal fails to comply with site plan criterion §4.1(b) is not supported by substantial evidence in the record as a whole.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that as to the appealed issues in site plan criteria §4.1(a) and §4.1(b), the decision of the DRB is not supported by substantial evidence in the record as a whole, and the conclusions are not supported by DRB's findings. Accordingly, the DRB's decision is vacated as to the issues on appeal, that is, the elements of site plan criteria §4.1(a) and §4.1(b) discussed above, and is remanded to DRB for further proceedings consistent with this decision, which may

12

include its determination of appropriate conditions and safeguards as provided in §4.0 of the Zoning Regulations.

Dated at Berlin, Vermont, this 30th day of July, 2007.

_____

Merideth Wright
Environmental Judge