STATE OF VERMONT

ENVIRONMENTAL COURT

|                                              |   |                        |
|----------------------------------------------|---|------------------------|
| In re White Major Subdivision Application    | } | Docket No. 237-11-07 Vtec |
|     (Appeal of White)    | } |                        |

### Decision and Order on Cross-Motions for Summary Judgment

Appellant-Applicants Richard and Linda White (Applicants) appealed from a decision of the Development Review Board (DRB) of the Town of Norwich, denying Applicants' application for a major subdivision.[1] Appellants are represented by Paul S. Gillies, Esq.; the Town of Norwich is represented by Frank H. Olmstead, Esq.

The parties have each moved for summary judgment on Question 1: whether the present application qualifies for a waiver of § 3.3(D)(2) of the Subdivision Regulations (Regulations) for the proposed access road to Lots 4 and 5 of the subdivision, pursuant to § 2.1(D).[2] The parties resubmitted Question 1 for decision on summary judgment, agreeing that it can be decided by the Court without the need for an evidentiary hearing. The following facts are undisputed.

Applicants propose to subdivide a 77-acre parcel in the Rural Residential zoning district to create 5 lots: Lot 1 is proposed to have an area of 4.3 acres, Lot 2 is proposed to have an area of 8.8 acres, Lot 3 is proposed to have an area of 9.8 acres, Lot 4 is proposed to have an area of 21.6 acres, and Lot 5 is proposed to have an area of 32.5

---

[1] The Town of Norwich has since adopted the procedures for on-the-record review of the decisions of its DRB; the hearing on this application, however, predates that change, so that the appeal of this decision remains de novo.

[2] All citations to section numbers refer to sections of the Town of Norwich Subdivision Regulations unless otherwise noted.

1

acres, of which 13.3 acres of open space are reserved in its southeast corner. The land slopes generally upwards from west to east, with some areas of gentle slope and other areas of steep slope. The house sites or building envelopes for each proposed lot have been located on areas of gentle slope on each lot.

An area of steep slope separates the easterly side of Lot 3 from the westerly sides of Lots 4 and 5; the building envelopes for Lots 4 and 5 are located on relatively flat areas on the height of land above the remainder of the property. An existing logging road traverses the area of steep slope from north to south, slanting upwards for access to the height of land on the property. The area of steep slope traversed by the existing logging road, measured perpendicularly to the contour lines, contains slopes of over 25%. The slope of the logging road itself is much less steep. The logging road has been used by large logging equipment for many years and has been used annually from at least 2003 through 2008, has been improved, and has not suffered from erosion problems.

Chapel Hill Road, a town road, forms the westerly boundary of the project property only at proposed Lot 1. A private road known as Stagecoach Road traverses the adjoining property to the south of the project property, with access onto Beaver Meadow Road, a town road. Applicants propose to extend Stagecoach Road northerly onto the project property in a northeasterly direction to a point that is close to the northerly boundary of the project property. At that point a short stub of right-of-way is reserved to the northerly boundary of the project property, to provide access for future development of property to the north. Lots 1 and 2 are located westerly of the roadway in the northwesterly portion of the property.

Beyond the reserved right-of-way stub, the project roadway is proposed to loop around and to extend in a southerly direction, following the pathway of the existing logging road. Lot 3 is located within the loop of the roadway between it and the southerly boundary of the property. Easterly of the roadway, Lot 4 is located in the

2

northeasterly portion of the property, and Lot 5 is located in the southeasterly portion of the property.

The project roadway is proposed to extend past the southeast corner of Lot 3 onto Lot 5, and then to turn back towards the northeast to a point near the building envelope for Lot 5. The proposed access road utilizes the path of the existing logging road to make an angled ascent along the side of the steep slope to access Lots 4 and 5. Although the steep slope itself, measured perpendicularly to the contour lines, contains slopes of over 25%, the maximum grade of the proposed access road is designed to be 10.68% and will not exceed 12%. The Norwich Private Highway Specifications allow a grade of up to 12% for an access roadway to serve developments of up to six houses.

At the end of the road on the plateau near the building envelope for Lot 5, a hammerhead turn-around is proposed to be installed. Beyond that point, two separate driveways are proposed to access the houses on Lots 4 and 5. Thus, the proposed roadway is proposed to be constructed and maintained to the Town's private highway standards all the way up to the lots at the height of land on the property.

An earlier proposal had proposed to end the project roadway at the stub right-of-way near the northerly boundary of the property, and to construct two separate but adjacent driveways more directly up an area of steep slope onto Lot 4 and continuing onto Lot 5. The path of these driveways would have traveled directly up the face of the slope as opposed to using an angled ascent as in the present proposal. These driveways were not proposed to be constructed to Town road standards, and would each have only been twelve to fifteen feet in width. The slope of each of the driveways would have exceeded 15% in places. The land the driveways would have traversed exceeds a slope of 15% but does not exceed 25%.

At the suggestion of the Norwich Fire Chief, who was concerned about access for emergency vehicles due to the steep grade and narrow width of the proposed driveways, Applicants changed the access for Lots 4 and 5 to the present proposal,

3

using the existing logging road to create a access road with a grade of no more than 12% to serve the entire subdivision. The Norwich Fire Chief stated that "in the interests of public safety we recommend that a waiver be gra[n]ted for the construction of the highway/driveway on this alignment with suitable provisions for protection against erosion and for slope stabilization."

Request for waiver of § 3.3(D)

Section 3.3(D) requires subdivision boundaries, lot layout, and development envelopes to be located and configured to "minimize adverse impacts to slopes greater than 15%" and to "avoid disturbance to slopes in excess of 25%." Even though the separate driveways originally proposed by Applicants were steeper in places than the road in the current proposal, because they would not have traversed slopes that exceeded 25% they would not have "disturbed" slopes in excess of 25%. The proposed access roadway requires a waiver of the requirements of § 3.3(D) as to slopes of greater than 25%.[3]

Waivers from the Planning and Design Standards contained in Article 3 of the Regulations, which includes § 3.3(D), are authorized by § 2.1(D). In order to qualify for such a waiver, Applicants must establish:

> that due to the special circumstances of a particular site, the requirements of the development review standards for which waiver is sought will create an unreasonable hardship or adversely affect significant natural resources, rural character, or aesthetics[,] and that granting the waiver will be consistent with the purposes of these regulations.

Applicants must also establish that, "in consultation with the fire and police chiefs, granting the waiver will not adversely affect public safety," and must establish "[t]hat

---

[3] In a decision on earlier summary judgment motions in the present appeal, issued July 29, 2008, this Court determined that § 3.3(D) creates an outright prohibition on development on slopes greater than 25 percent, and that Applicant's proposed access road therefore requires a waiver from the requirements of § 3.3(D) pursuant to § 2.1(D).

granting the waiver will not adversely affect the character of the neighborhood." § 2.1(D).

The Town argues that § 3.1(B) also requires Applicants to show that the proposed "subdivision clearly meets the intent of these regulations" in order to receive the requested waiver. As already determined in the July 29, 2008 decision in this appeal, § 3.1(B) does not apply to the present proposal, as it is limited to the subdivisions creating no more than two lots, and the present proposal involves the creation of five lots. Even if § 3.1(B) were to apply to the proposed subdivision (and if it is sufficiently specific to be enforceable, see In re Appeal of JAM Golf, LLC, 2008 VT 110, ¶ 13), the requirement contained in § 3.1(B) is essentially the same as § 2.1(D)'s requirement to show that "granting the waiver will be consistent with the purposes of these regulations."

### Effect on public safety

The Town does not argue that the requested waiver would have an adverse effect on public safety. Rather, the preference of the Fire Chief for this plan shows that the grant of the requested waiver to allow a less steep road access to Lots 4 and 5 would have a positive effect on public safety, as compared with the steeper, narrower driveway accesses. The third requirement for a waiver under § 2.1(D) therefore is met.

### Effect on the character of the neighborhood

The site plans in evidence show that the uses of the properties surrounding the proposed subdivision site are primarily residences. Another residential subdivision is located on property immediately to the south along Stagecoach Road. The character of the neighborhood is rural and residential. All five lots in the proposed subdivision are intended for single-family residential use; this intended use will not change if the waiver is granted. The requested waiver allowing a less steep road access to Lots 4 and

5

5 will not adversely affect the rural and residential character of the neighborhood.

    <u>Special circumstances and unreasonable hardship</u>

    Section 2.1(D) requires Applicants to show that the requirement sought to be waived creates an "unreasonable hardship."  The unreasonable hardship must be "due to the special circumstances" of the proposed development site.[4]

    The "special circumstances" posed by the proposed subdivision site is the fact that a steep slope separates one portion of the property from the other, requiring some means of crossing this steep slope to access Lots 4 and 5.  The existing logging road is a preferable route to access Lots 4 and 5, as it has a slope of less than 12% and travels along a stable ledge or shelf of land.  The requirements of § 3.3(D) create an "unreasonable hardship," in that Lots 4 and 5 cannot be accessed by the existing logging road without traversing a slope of greater than 25%.  As the route of the preferred roadway was recommended by the Fire Chief as well as being preferable from an engineering standpoint, the hardship created by the requirement is especially unreasonable.

    Unlike the criteria for a variance, Applicants need not show that the requested waiver is necessary to make any reasonable use of their property.  Compare 24 V.S.A. § 4469(a)(2) (requiring a showing that a variance is "necessary to enable reasonable use of the property") and <u>In re Dunnett</u>, 172 Vt. 196, 200 (2001) (denying a variance because a reasonable use of the property existed without it), with 24 V.S.A. § 4418(2)(A) (authorizing waivers from subdivision bylaws without a showing of necessity), and <u>In re Hartland Group, 237 North Ave. Project</u>, No. 120-6-05 Vtec, slip op. at 14–15 (granting a waiver without a showing of necessity), aff'd sub nom. <u>In re Hartland</u>

---

[4]  Applicants do not claim that development in compliance with the requirement would "adversely affect significant natural resources, rural character, or aesthetics," an alternate criterion of § 2.1(D).

<u>Group North Ave. Permit</u>, 2008 VT 92, ¶ 13.

The first requirement for a waiver pursuant to § 2.2(D) is met, in that the requirements of § 3.3(D) as to slopes of over 25% create an unreasonable hardship, due to the special circumstances that exist on Applicants' property.

<u>Consistency with the "purposes" of the Regulations</u>

Applicants must also show that granting the waiver would be "consistent with the purposes of these regulations," § 2.1(D), which include the purposes of § 3.3(D), the provision sought to be waived.

As illustrated by a reading of § 3.3(D) as a whole, the purpose of this regulation's prohibition on disturbance of slopes of over 25%, and requirement to minimize adverse impacts on slopes of over 15%, is to protect against erosion and damage to the land. Section 3.3(D)(1) states in part:

> In the event that development on slopes greater than 15% is necessary to achieve the most desirable subdivision design for a site, the [DRB] shall limit clearing, excavation, and filling on such lands to the greatest extent practical, and may require the preparation and implementation of an erosion control plan for the property, in accordance with Section 3.5, as a condition of approval.

This provision allows for development of steep slopes, in certain circumstances, provided that certain erosion control measures are taken, showing that erosion is the primary concern or purpose behind the prohibition on disturbance of slopes of over 25%.

Applicants have provided evidence, which the Town has not countered, that erosion during construction of the road is less of a concern on the proposed subdivision site than it may be on other properties, because "[t]he limited soil cover to ledge allows for very little excavation and adjacent vegetative cover would minimize any chance of soil erosion during construction." Thetford Aff. ¶ 11; see <u>Endres v. Endres</u>, 2008 VT

7

124, ¶ 10 (explaining that under V.R.C.P. 56(e), the party opposing summary judgment "has the burden of submitting credible documentary evidence or affidavits sufficient to rebut the evidence of the moving party"). To the extent that these concerns remain, Applicants' engineer has addressed them. For example, during construction of the access road, "[d]isturbed roadside areas will be seeded and hay mulched the same day as finished." Id.

As for erosion concerns during use of the road (as opposed to during the road's construction), Applicants have provided evidence, which the Town has not disputed, that the logging road did not suffer from erosion problems during its years of use as a logging road. White Aff. ¶¶ 5–6, Aug. 27, 2008; see Endres v. Endres, 2008 VT 124, ¶ 10. Additionally, the proposed access road will create a lesser risk of erosion than did the two separate driveways in the original proposal, because the access road will have a lesser grade than the two separate driveways. Granting a waiver of § 3.3(D) for the proposed project to allow the access road is therefore consistent with § 3.3(D)'s objective of preventing erosion.

The requested waiver is also consistent with § 3.3(D)(6), which states that "[a]ccess roads, including the conversion of logging roads to private roads or driveways, and utility corridors, shall use or share existing accesses and rights-of-way where feasible, follow existing contours to achieve angled ascents, and avoid areas of steep slopes." The proposed access road uses an existing access, the logging road; it creates a shared access rather than two separate driveways; it follows contours to achieve an angled ascent. Although it traverses an area of steep slope, the road itself will not have a slope greater than 12 percent, whereas the slope of the originally-proposed separate driveways would have exceeded 15 percent in some places.

Another purpose expressed in Article 3 is a general preference for avoiding development on steep slopes. For example, § 3.2(B)(3) states that "[i]t is the intent of these regulations to limit development density on parcels on which fragile features and

8

critical natural resources are located;" § 3.3(D)(7) states that "[l]and characterized by steep slopes, prominent knolls and ridgelines should be designated as open space." The requested waiver is consistent with this preference for avoiding development on steep slopes in that the proposed access road utilizes the <u>existing</u> logging road, thereby limiting the amount of disturbance of the steep slope. Upgrading the logging road for use as the access road can be accomplished without blasting and with "very little excavation." Thetford Aff. ¶¶ 10–11. Creating two new individual driveways would likely create more disturbance than would granting the requested waiver to allow the access road. Furthermore, other than the portion of the access road at issue, no development will occur on steep slopes; the development envelopes for each lot exclude the steeply sloped areas.

The general purposes of the Subdivision Regulations are found in § 1.2(A). Of the twelve listed purposes, many do not apply to the requested waiver. The requested waiver could potentially affect three purposes listed in § 1.2(A), found in subsections 3, 5, and 10.

The purpose stated in subsection 3 is "[t]o ensure that land to be subdivided is of such character that it can be used safely for its intended purposes." The access road has been designed to follow the ledge or shelf on which the existing logging road runs, and to be constructed with culverts to divert runoff, large crushed stone to line its ditches, and a compacted gravel base and crushed stone surface. Due to the ledge or shelf along which the existing logging road travels, and the proposed construction design of the access roadway, it will be able to be used safely for its intended purposes.

Subsection 5 states that another purpose of the Subdivision Regulations is "[t]o protect and provide for the public health, safety, and general welfare of the Town of Norwich." The requested waiver is consistent with these purposes, in that allowing the access road to traverse the steep slope along the path of the logging road will avoid the creation of a safety hazard. In fact, in the opinion of the Fire Chief, the proposed access

9

road will improve safety of fire access as compared with separate steeper, narrower driveways. Additionally, Applicants have provided evidence, which the Town has not countered, that the police chief also does not believe the proposed access road will cause any safety issues. Applicants' Ex. 1-A.

Subsection 10 of § 1.2(A) provides another purpose of the Regulations: "[t]o prevent pollution of air, streams and ponds; to ensure the adequacy of drainage facilities; to safeguard ground and surface waters; and to encourage the wise use and management of natural resources throughout the Town in order to preserve the integrity, stability, and beauty of the community and the value of the land." As discussed above, to the extent that erosion and runoff resulting from the access road is a concern of this section, the proposal controls it adequately during construction and use of the access road. The proposed waiver is therefore consistent with the general purposes of the Subdivision Regulations, as well as with § 3.3(D).

Section 2.1(D) requires an applicant for a waiver to show consistency with the purposes of "these regulations," meaning the Subdivision Regulations. Section 1.2(A)(1) merely states that one of the objectives of the Subdivision Regulations is "[t]o guide future development in accordance with the Norwich Town Plan, [and] zoning bylaws;" this language does not have the effect of requiring consistency with all of the provisions contained in these documents in order to show that the requested waiver is consistent with the Subdivision Regulations' purposes. Although § 1.2(A)(1) refers to the zoning bylaws and the Town Plan, these documents are not incorporated by reference. The language of § 1.2(A)(1) is not specific enough to create a regulatory requirement; rather, it is "'aspirational,' and 'abstract and advisory.'" In re Appeal of Shaw, 2008 VT 29, ¶ 18, 183 Vt. 587 (mem.) (citation omitted) (quoting In re Appeal of Wesco, Inc., 2006 VT 52, ¶ 33, 180 Vt. 520 (mem.); Kalakowski v. John A. Russell Corp., 137 Vt. 219, 223 (1979)); accord In re Appeal of JAM Golf, LLC, 2008 VT 110, ¶¶ 16–17.

Based on the foregoing, the second requirement for a waiver under § 2.1(D) is

met: the requested waiver is "consistent with the purposes of these regulations."

Accordingly, as all of the requirements for granting the requested waiver are met, it is hereby ORDERED and ADJUDGED that Applicants' Motion for Summary Judgment is GRANTED and the Town's Motion for Summary Judgment is DENIED; the access road proposed for the subdivision qualifies for a waiver from the requirements of § 3.3(D) of the Subdivision Regulations as to slopes in excess of 25%. As discussed at previous telephone conferences, the parties anticipated that issuance of this decision will allow them to resolve Question 2 of the Statement of Questions, and therefore to conclude this appeal. On or before September 9, 2009, they shall file a proposed judgment order for the Court's signature, or shall inform the Court that they are unable to resolve the remainder of the appeal, in which case a telephone conference will be held on September 14, 2009 (see enclosed notice).

Done at Berlin, Vermont, this 25th day of August, 2009.

_____
Merideth Wright
Environmental Judge