STATE OF VERMONT

ENVIRONMENTAL COURT

|  | }  |  |
| --- | --- | --- |
| In re Rinker's, Inc., d/b/a | } |  |
|   Rinker's Communications, and | } | Docket No. 302-12-08 Vtec |
|   Beverly and Wendell Shephard | } |  |
|   (Appeal of Shaw, <u>et al</u>.) | } |  |
|  | } |  |

<u>Decision and Order on Appellee-Applicants' Motion for Partial Summary Judgment</u>

Appellants Karen Shaw, Forrest Foster, Joe McCarthy, Jo-Anne McCarthy, Katherine Mitchell, and David Mitchell appealed from a decision of the District 7 Environmental Commission issuing Act 250 Land Use Permit No. 7C1219-2 to Appellee-Applicants Rinker's, Inc., d/b/a Rinker's Communications (Rinker's), and Beverly and Wendell Shephard.[1]  By the same notice of appeal, Heather Bryant sought to appeal from what she characterized as the District Commission's denial of party status to her under Act 250 Criterion 8; on April 22, 2009 this Court issued an entry order explaining that Ms. Bryant had been granted "friend of the commission" status by the district commission and that she retains that status as <u>amicus</u> <u>curiae</u> in the present appeal.  Rural Newco, LLC, d/b/a AT&T Mobility (AT&T) was given leave to participate in this appeal as <u>amicus</u> <u>curiae</u> by decision and order of this Court dated April 14, 2009. As Rinker's and AT&T have filed joint memoranda, this decision will refer to them together as Appellee-Applicants or Applicants.

Appellants and Ms. Bryant are represented by Jared M. Margolis, Esq.; Appellee-Applicant Rinker's is represented by L. Brooke Dingledine, Esq.; AT&T is represented

---

[1]    Applicant-Landowners Beverly and Wendell Shephard have not entered an appearance in this matter; Rinker's has entered into a lease of the proposed site from the Shephards.

by William J. Dodge, Esq. and Charlotte B. Ancel, Esq. The Land Use Panel of the Natural Resources Board has not entered an appearance in this matter, but has informational status through Melanie M. Kehne, Esq.; the Vermont Agency of Natural Resources has not entered an appearance in this matter, but has informational status through Judith Dillon, Esq.

Other than Heather Bryant's party status, which has been addressed, the only issue raised in the Statement of Questions in the present appeal is whether the proposed project will "have an undue adverse effect on the aesthetics of the area pursuant to 10 V.S.A. § 6086(a)(8)."

Rinker's and AT&T have moved for partial summary judgment. The following facts are undisputed unless otherwise noted.

Applicants seek an Act 250 permit to replace an existing 57-foot-high communications tower with a new 180-foot-high communications tower, together with related antennas (raising the combined structure to a height of 200 feet), and related infrastructure, including buildings and equipment. The site of the proposed project is an approximately two-acre portion of an approximately 200-acre tract on Bridgman Hill Road, in the Compact Residential zoning district. The proposed site is an open meadow, surrounded by trees to the northwest and northeast. No tree cutting is proposed. An existing access road will serve the proposed project.

The proposed tower is designed in the guyed lattice style. Rinker's is in the business of providing pager services, which are used by businesses and by emergency services. The proposed tower is designed to improve the signal for Rinker's pager service. AT&T proposes to locate mobile phone antennas on the tower. The tower is designed to accommodate more than these two providers. As of the present, only Rinker's and AT&T's proposals to locate antennas on the tower have been stated to the Court.

In the Compact Residential zoning district, telecommunications facilities require

2

conditional use approval from the municipal Zoning Board of Adjustment (ZBA) under § 5.2 of the Hardwick Zoning and Subdivision Bylaws (Bylaws), and must also meet municipal zoning standards specific to telecommunications facilities in § 4.15 of the Bylaws.[2]

Rinker's received conditional use approval for the proposed project from the ZBA. In the appeal of that municipal conditional use approval to this Court (Docket No. 4-1-05 Vtec), Appellants Karen Shaw, and Forrest Foster, and amicus Heather Bryant participated as appellants, while Appellants Joe McCarthy, Jo-Anne McCarthy, David Mitchell, and Katherine Mitchell participated as interested parties. The Court granted conditional use approval in October 2006, finding that the proposed project generally met the requirements of §§ 5.2 and 4.15 of the Bylaws, and concluding specifically that "the proposed tower does not adversely affect the scenic and historic resources of the neighborhood in which it is sited." In re Appeal of Shaw, No. 4-1-05 Vtec, slip op. at 8 (Vt. Envtl. Ct. Oct. 2, 2006) (Durkin, J.). The Environmental Court's decision was affirmed by the Vermont Supreme Court. In re Appeal of Shaw, 2008 VT 29, 183 Vt. 587 (mem.).

In June 2008, Rinker's submitted an application for an Act 250 permit for the proposed project. In late 2008 the District Commission approved the application, subject to conditions, and this appeal followed.

Act 250 Criterion 8

Criterion 8 of Act 250 requires that proposed projects "[w]ill not have an undue adverse effect on the scenic or natural beauty of the area, aesthetics, historic sites or rare and irreplaceable natural areas." 10 V.S.A. § 6086(a)(8). In addition, subsection (A) of Criterion 8 analyzes a project's effect on necessary wildlife habitat and endangered

---

[2] All citations to section numbers refer to sections of the Hardwick Zoning and Subdivision Bylaws effective October 30, 2003 unless otherwise specifically noted.

species. 10 V.S.A. § 6086(a)(8)(A). The components of Criterion 8 relating to historic sites, to rare and irreplaceable natural areas, and to necessary wildlife habitat and endangered species are not claimed to be at issue in this case and will not be referred to further.

To avoid interpreting any of the components or elements of Criterion 8 as surplusage, the term "aesthetics" and the phrase "scenic or natural beauty of the area" must each carry a meaning that is separate and distinct from the other. See In re Jenness & Berrie, 2008 VT 117, ¶ 24 (citing Robes v. Town of Hartford, 161 Vt. 187, 193 (1993)) ("When possible we construe statutes to avoid rendering one part mere surplusage . . . .").

The only element of Criterion 8 raised by Appellants in their Statement of Questions is that of "aesthetics." Appellants do not raise any issues as to the effect of the project on the scenic or natural beauty of the area. "Aesthetics" is therefore the only element of Criterion 8 at issue in this appeal.

However, Appellee-Applicants' motion and Appellants' response have also raised the issue of the project's effect on scenic and natural resources under Criterion 8, conflating it with the issue of aesthetics. The motion argues that the doctrine of issue preclusion should prevent the Court from addressing either the "aesthetics" or the "scenic and natural resources" element of Criterion 8 in the present appeal, arguing that both issues have already been decided in favor of Rinker's in the municipal litigation. Because this appeal is limited to the issues raised in Appellants' Statement of Questions, this decision will address only issue preclusion as to aesthetics.

Issue Preclusion as to Aesthetics

The doctrine of issue preclusion prevents "the subsequent relitigation of an issue that was actually litigated and decided in a prior case where that issue was necessary to the resolution of the dispute." In re T.C., 2007 VT 115, ¶ 20, 182 Vt. 467 (quotation

4

omitted).  All five of the following factors must be met for issue preclusion to apply:

> (1) preclusion is asserted against one who was a party or in privity with a party in the earlier action; (2) the issue was resolved by a final judgment on the merits; (3) the issue is the same as the one raised in the later action; (4) there was a full and fair opportunity to litigate the issue in the earlier action; and (5) applying preclusion in the later action is fair.

Trepanier v. Getting Organized, Inc., 155 Vt. 259, 265 (1990) (citing Bernhard v. Bank of America Nat'l Trust & Sav. Ass'n, 122 P.2d 892, 895 (Cal. 1942)).

In determining whether the last two factors above have been met, courts are instructed to consider

> the type of issue preclusion, the choice of forum, the incentive to litigate, the foreseeability of future litigation, the legal standards and burdens employed in each action, the procedural opportunities available in each forum, and the existence of inconsistent determinations of the same issue in separate prior cases. In short, in order to satisfy the final two criteria, the party opposing [issue preclusion] must show the existence of circumstances that make it appropriate for an issue to be relitigated.

Id. at 265–66 (footnotes and citations omitted).


Factors One & Two: Parties in the earlier action; Issue resolved by a final judgment

Appellants do not dispute that they all participated as parties in the earlier appeal of the municipal conditional use approval.  Although four of the Appellants participated as interested persons, rather than as appellants, interested persons qualify as parties for the purposes of issue preclusion.  Scott v. City of Newport, 2004 VT 64, ¶ 10, 177 Vt. 491 (mem.).

The appeal in Docket No. 4-1-05 Vtec was resolved by a final judgment of this Court, which was subsequently affirmed by the Vermont Supreme Court.  In re Appeal of Shaw, No. 4-1-05 Vtec (Vt. Envtl. Ct. Oct. 2, 2006) (Durkin, J.), aff'd, 2008 VT 29 (mem.).  Appellants do not dispute that this constituted a final judgment on the merits.

<u>Factors Three and Four: Whether the issue is the same as the one raised in the later action; Whether there was a full and fair opportunity to litigate the issue</u>

These factors requires the Court to determine if the issue under Act 250 Criterion 8, whether the project will have an undue adverse effect on aesthetics, is the same issue as any issue decided in the municipal case, and whether the municipal case allowed the parties the full and fair opportunity to litigate the issue.

The municipal case determined that "the proposed tower does not adversely affect the scenic and historic resources of the neighborhood in which it is sited," finding that the proposed project generally met the standards in the Bylaws for conditional use approval, § 5.2, and for telecommunications towers, § 4.15(F). <u>In re Appeal of Shaw</u>, No. 4-1-05 Vtec, slip op. at 8 (Vt. Envtl. Ct. Oct. 2, 2006) (Durkin, J.).

The first sentence of § 4.15(F)(5) requires that "[n]ew telecommunications facilities, including towers, shall be sited and designed to minimize their visibility and not result in an undue adverse impact on the town's scenic landscape." § 4.15(F)(5). No section of the municipal Bylaws specifically regulates aesthetics, as distinct from the effect of the proposed project on scenic landscape.

The methodology to be applied to determine whether Criterion 8's aesthetics standard is met is found in <u>In re Quechee Lakes Corp.</u>, Permit Nos. 3W0411-EB & 3W0439-EB, Findings of Fact, Concl. of Law & Order, at 18–20 (Vt. Envtl. Bd. Nov. 4, 1985) (describing the method of analysis under Criterion 8). It is important to note that the project analyzed in the <u>Quechee Lakes</u> decision involved the effect of several building projects on various specific areas of landscape. For that reason, issues of the project's effect on aesthetics and on scenic and natural beauty were analyzed together rather than separately. Nevertheless, the <u>Quechee Lakes</u> methodology shows that aesthetics is a broader and different category than scenic and natural beauty — depending on its surroundings, a project could have an adverse effect on aesthetics without having an adverse effect on scenic or natural beauty.

6

<u>Adverse Effect</u>

The <u>Quechee</u> test first requires the Court to determine whether the proposed project will have any adverse effect, made by analyzing whether it will be "in harmony with its surroundings." This determination is based on the following factors:

1. What is the nature of the project's surroundings? Is the project to be located in an urban, suburban, village, rural or recreational resort area? What land uses presently exist? What is the topography like? What structures exist in the area? What vegetation is prevalent? Does the area have particular scenic values?
2. Is the project's design compatible with its surroundings? Is the architectural style of the buildings compatible with other buildings in the area? Is the scale of the project appropriate to its surroundings? Is the mass of structures proposed for the site consistent with land use and density patterns in the vicinity?
3. Are the colors and materials selected for the project suitable for the context within which the project will be located?
4. Where can the project be seen from? Will the project be in the viewer's foreground, middleground or background? Is the viewer likely to be stationary so that the view is of long duration, or will the viewer be moving quickly by the site so that the length of view is short?
5. What is the project's impact on open space in the area? Will it maintain existing open areas, or will it contribute to a loss of open space?

<u>In re Quechee Lakes Corp.</u>, Permit Nos. 3W0411-EB & 3W0439-EB, Findings of Fact, Concl. of Law & Order, at 18 (Vt. Envtl. Bd. Nov. 4, 1985).

The first stage of the <u>Quechee</u> analysis requires the Court to consider factors related to aesthetics that may not be related to the project's effect on the town's scenic landscape, such as the compatibility of the architectural style of a proposed project with surrounding structures, or the compatibility of the scale of a project with the land use and density patterns in the vicinity. Because of the difference in the methodology used for the aesthetics analysis under Act 250 Criterion 8, compared with the scenic landscape analysis under the municipal Bylaws, and because of the distinction between

7

aesthetics and scenic landscape, the aesthetics issue in the present Act 250 appeal is not the same as the issue resolved in the municipal appeal regarding the lack of an undue adverse impact on the town's scenic landscape.

Appellee-Applicants argue that the standards applicable to conditional use approval, together with the standards specific to telecommunications facilities in § 4.15, also preclude litigation of aesthetics issues in the present appeal. Section 5.2(E)(2) of the Bylaws requires the reviewing body to consider the effect of the proposed project on the "character of the area." This requirement is not synonymous with "aesthetics."

"Aesthetics" has been defined by the former Environmental Board as involving "all the senses, including sound, smell, and overall perception. Aesthetics involves the sense of place and the quality of life that a place affords. The aesthetics of a Vermont village environment include all of the qualities that make it attractive and desirable to live in and visit." Re OMYA, Inc., Permit No. 9A0107-2-EB, Findings of Fact, Concl. of Law, & Order, at 22 (Vt. Envtl. Bd. May 25, 1999). By contrast, "character of the area" is defined by the "purpose or purposes of the zoning district within which the project is located, and [by the] specifically stated policies and standards of the municipal plan." 24 V.S.A. § 4414(3)(A)(ii). Reviewing a proposed development's compatibility with the character of the area requires an evaluation of the purposes of and future plans for the zoning district, and a determination of whether the proposed development is appropriate in light of those purposes and plans. Aesthetics, therefore, has a much broader definition than "character of the area," and, because of these different meanings, a proposed project that has no undue adverse effect on the character of the area may nevertheless have an undue adverse effect on aesthetics.

Therefore, as to aesthetics, the issue raised in the present Act 250 appeal as to whether the project will have an adverse effect on aesthetics is not the same as the issues addressed in the municipal appeal, and Appellants have not had a full and fair opportunity to litigate it.

8

<u>Undue Adverse Effect</u>

The second step in the <u>Quechee</u> analysis, if a proposed project is found to have an adverse effect, is to determine whether the adverse effect is "undue," by analyzing the following three questions:

1. Does the project violate a clear, written community standard intended to preserve the aesthetics . . . of the area? Such standards may, for example, be set forth in the local or regional plan . . . .
2. Does the project offend the sensibilities of the average person? . . . It is not enough that we might prefer to see a different design or style of building, or that we might prefer a different type of land use, but that the project, when viewed as a whole, is offensive or shocking, because it is out of character with its surroundings, or significantly diminishes the scenic qualities of the area.
3. Has the Applicant failed to take generally available mitigating steps which a reasonable person would take to improve the harmony of the proposed project with its surroundings? . . .

<u>In re Quechee Lakes Corp.</u>, Permit Nos. 3W0411-EB & 3W0439-EB, Findings of Fact, Concl. of Law & Order, at 19–20 (Vt. Envtl. Bd. Nov. 4, 1985); <u>cf</u>. <u>In re UPC Vermont Wind, LLC</u>, 2009 VT 19, ¶ 24 (affirming the former Environmental Board's use of the <u>Quechee</u> test); <u>In re Times & Seasons, LLC</u>, 2008 VT 7, ¶¶ 8–10, 183 Vt. 336 (same); <u>In re Halnon</u>, 174 Vt. 514, 515 (2002) (mem.) (same); <u>In re McShinsky</u>, 153 Vt. 586, 591–92 (1990) (same). If any one of the three questions above is answered affirmatively, the adverse effect is considered "undue" under Criterion 8.

The municipal case did not resolve the question of whether there is a clear, written community standard intended to preserve the aesthetics of the area, either within the Town Plan or from another source.

The municipal appeal determined that the Town Plan was not incorporated into the zoning bylaws so as to be independently enforceable. <u>In re Appeal of Shaw</u>, No. 4-1-05 Vtec, slip op. at 6 (Vt. Envtl. Ct. Oct. 2, 2006) (quoting <u>In re Appeal of Wesco</u>, 2006

VT 52, ¶ 33, 180 Vt. 520); cf. In re JAM Golf, LLC, 2008 VT 110, ¶ 16 (concluding that incorporation of city plan into town bylaws is an authorized method of zoning regulation). While a municipal plan that has not been incorporated into the zoning bylaws has no independent regulatory effect in the municipal context, such a plan can still provide evidence of a "clear, written community standard" for purposes of the Quechee analysis under Act 250 Criterion 8. The question of whether the proposed project violates "a clear, written community standard" regarding aesthetics, whether stated in the Town Plan[3] or elsewhere, was not addressed in the municipal appeal. Appellants have not had a full and fair opportunity to show whether a clear, written community standard exists that is intended to preserve the aesthetics of the project area.

The present appeal is distinguishable in this respect from In re Hartland Group North Avenue Permit, 2008 VT 92, ¶¶ 7–8, in which the District Commission's finding that a proposed project was "in conformance" with the Town Plan under Act 250 Criterion 10 had preclusive effect in a subsequent municipal appeal in which the issue of the proposed project's "substantial conformance" with the Town Plan was raised under the zoning bylaws. In Hartland Group, the issue of the project's compliance with the Town Plan was the same under the municipal zoning ordinance as under Criterion 10. In the present appeal, the Town Plan has a different function, if used to demonstrate

---

[3]    In fact, the only reference to the Town Plan in § 4.15(F)(5) is in subsection (a)(vi), which requires the reviewing body to consider the impacts of a project on "the sensitivity or unique value of a particular view," which in turn can be determined either through a specific site assessment, or through the Town Plan's identification of "scenic features or landscapes." The Hardwick Town Plan does not identify scenic features or landscapes for protection with sufficient specificity to provide guidance to the ZBA under § 4.15(F)(5)(a)(vi). In re Appeal of Shaw, 2008 VT 29, ¶ 18 (mem.) (citing In re Wesco, Inc., 2006 VT 52, ¶ 33, 180 Vt. 520 (mem.)); and see also In re JAM Golf, LLC, 2008 VT 110, ¶ 17.
. However, this use of the Town Plan to identify the unique value of a particular view is distinct from and does not preclude its use in the Quechee test methodology to demonstrate a clear, written community standard regarding aesthetics.

a clear written community standard under Criterion 8, as opposed to its use in § 4.15(F)(5)(a)(vi) of the Bylaws.

The municipal case also did not resolve the inquiry under the <u>Quechee</u> test of whether the applicant has "failed to take generally available mitigating steps which a reasonable person would take to improve the harmony of the proposed project with its surroundings." The Bylaws do require consideration of certain preferences. Specifically, § 4.15(F)(5)(c) creates a preference for siting telecommunications facilities in forested settings "wherever feasible," and § 4.15(F)(5)(e) requires such facilities to "be designed to blend into the surrounding environment," also to the "greatest extent feasible." The municipal Bylaws do not replicate Act 250's requirement that an applicant must take "generally available mitigating steps which a reasonable person would take to improve the harmony of the proposed project with its surroundings." Appellants therefore have not had a full and fair opportunity to litigate the issue of generally available mitigation measures to improve the project's harmony with its surroundings, beyond the two requirements of the Bylaws.

In addition, the municipal appeal did not address whether the proposed project would "offend the sensibilities of the average person," or specifically whether the project, "when viewed as a whole, is offensive or shocking."

Because the third and fourth factors for issue preclusion are not met in the present appeal, the Court need not address the fifth factor, regarding the fairness of applying issue preclusion.

Of course, specific factual findings made in the municipal appeal are precluded from being relitigated. On or before September 18, 2009, the parties may submit an agreed statement of such factual findings material to the present case, taken from the Environmental Court decision in <u>In re Appeal of Shaw</u>, No. 4-1-05 Vtec (Vt. Envtl. Ct.

11

Oct. 2, 2006) (Durkin, J.), and may submit separate statements of any such factual findings about which they disagree. The Court will rule as to whether any disputed factual findings are or are not precluded at the outset of the trial.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellee-Applicants' Motion for Summary Judgment is DENIED. The trial is now scheduled for September 23, 24 and 25. Please note that the parties' schedules did not allow a site visit to be held in advance of the trial dates, so that the site visit will be held on September 23, 2009, beginning at 9:00 a.m. At the conclusion of the site visit, the participants will proceed to the courthouse in St. Johnsbury to commence the trial. Please advise any witnesses who will not be attending the site visit that the trial will have a delayed start time.

Done at Berlin, Vermont, this 19th day of August, 2009.

_____
                    Merideth Wright
                    Environmental Judge